## NICHOLSON et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10798.

Circuit Court of Appeals, Eighth Circuit.

June 28, 1937.

Chase Morsey, of St. Louis, Mo., for petitioner.

W. Croft Jennings, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals (32 B.T.A. 977) affirming deficiencies of income tax for the calendar year 1929 against James Nicholson in the amount of $5,516.51 and against Ada M. Nicholson in the amount of $1,334.71. The cases were consolidated for hearing before the Board and come here upon a joint petition for review.

There are involved in the consolidated cases two items claimed by the petitioners as deductible losses for the tax year. The first item is for a claimed loss on the alleged sale of 790 shares of National Cash Register Company stock, and the second for a loss on 6,600 shares of Industrial Process & Engineering Company stock claimed to have become worthless in 1929. The Commissioner disallowed the first item on the ground that the sale was not bona fide, and the second item on the ground that the stock became worthless prior to 1929.

The findings of fact of the Board, supported by substantial evidence, with respect to the National Cash Register Company stock, are as follows: Prior to January 31, 1929, James Nicholson owned 172½ shares of stock of the Ellis Adding Typewriter Company and Ada M. Nicholson, his wife, 118½ shares. In January, 1929, the Ellis Company was sold to the National Company, and each of the petitioners exchanged his stock in the Ellis Company for stock in the National Company and a cash bonus of $400 a share. At the conclusion of the transaction James Nicholson held 172 shares and Ada M. Nicholson 118 shares of the National Company, with other rights not here material.

In their respective federal income tax returns for 1929 each of the petitioners reported a profit on the sale and exchange of the Ellis stock of $54,350.75. In the notices of deficiency issued, the profit of Ada M. Nicholson was shown to be $47,250 and that of James Nicholson $69,000, which was the amount of cash received by each.

In October, 1929, in addition to the 290 shares of National stock owned by petitioners and acquired in the exchange of Ellis stock, James Nicholson owned 500 shares acquired at different times at an aggregate cost of $54,170. On October 29, 1929, the market price of the stock dropped from 100 to 64. On that day James Nicholson agreed to transfer the 290 shares owned by him and his wife to their son-in-law, Joseph B. Morrill, at 64, which was the low on the market for that day, taking his note therefor and the shares as collateral. On the following day Morrill executed two notes payable on demand, one to James Nicholson for $11,008 secured by 172 shares of stock and one to Ada M. Nicholson for $7,552 secured by 118 shares of stock. The stock was transferred to the name of Morrill and the certificates indorsed by him and left with Nicholson's brokers.

On November 13, 1929, Nicholson transferred to Morrill the remaining 500 shares owned by him at 61, the low of the market for that day, taking his demand note therefor in the amount of $30,500. Morrill did not indorse the certificates in this case, but signed a blanket indorsement which permitted Nicholson to keep the stock as collateral in his account with his brokers.

The three demand notes all provided for interest at the rate of 6 per cent. per annum.

Both petitioners deducted losses for the sale of the stock in their income tax returns for the year 1929, which was disallowed by the Commissioner. Both claimed losses in equal amounts.

In March, 1930, Morrill turned back to his father-in-law, James Nicholson, the entire 790 shares at the low of the market for the day and his three demand notes were surrendered marked "Paid 3/21/30." The price at which the stock was turned over showed a profit to Morrill of $1,090 over the cost price. Of this $1,086.78 cents was applied by notation to the payment of interest on the three notes and the balance credited on an unsecured $5,500 note of Morrill's held by Nicholson. This old note was also credited with $1,382.50, representing a dividend on the stock in January, 1930, which Morrill upon its receipt had deposited in his father-in-law's account. In his income tax return for 1930 Morrill did not report the January dividend as income; but he included the $1,090 profit on the stock and deducted the $1,086.78 as interest. Nicholson reported the same item as interest received.

In 1929, Morrill was 50 years of age, and his father-in-law Nicholson was 70.

Morrill received that year a salary of $9,300. He was worth approximately $40,000. His property consisted of a house estimated to be worth $25,000 and stocks of the approximate value of $15,000.

The reason given for the sale of the stock to Morrill in 1929 was that Nicholson was considerably upset by the drop in the market price of the stock and proposed to sell all his holdings on the market. Morrill discussed the matter with him and tried to persuade him that it was not the time to sell. The conversations resulted in the transfer to Morrill for his demand notes. The reason given for turning the stock back to Nicholson in March, 1930, was that Nicholson was pressed for money, and Morrill could not procure it for him without selling his property or the stock. The market price of the stock had risen during the three months that Morrill held it; so it was turned back.

The Board was of opinion that the sale of the stock was sham and unreal; that the parties never intended to complete a sale; and that there never was an intent to change ownership. It pointed out that Nicholson never gave up control over the stock; that he had the complete use and benefit of it for whatever purpose he desired all the time; that Ada M. Nicholson was never informed that her stock was being dealt with; and that the circumstances require close scrutiny because of the family relation of the parties and the relation of the amount involved to the financial responsibility of Morrill.

 Deductions from gross income by individuals in their income tax returns for losses on sales of stock are governed by sections 23 and 118 of the Revenue Act of 1928, c. 852, 45 Stat. 791 (26 U.S.C.A. §§ 23 and note, 118 note), and Treasury Regulations 74 promulgated thereunder. Article 174 of the Regulations provides that "A person possessing stock of a corporation cannot deduct from gross income any amount claimed as a loss merely on account of shrinkage in value of such stock through fluctuation of the market or otherwise." If a sale by a taxpayer is not complete and final, with no understanding to repurchase, the loss is not deductible. Rand v. Helvering (C.C.A.8) 77 F.(2d) 450, 451. In the opinion in the Rand Case Judge Stone speaking for the court said: "The Board was not compelled blindly to accept their [the taxpayer's] testimony that there was no such understanding. It could examine the probabilities of such truth as revealed by the evidence of what was done." One of the tests frequently applied to an alleged sale to determine whether or not it is real is the retention by the seller of dominion over the stock or the transfer of control to the buyer. If the seller retains such control, it is not a sale. Shoenberg v. Commissioner (C.C.A. 8) 77 F.(2d) 446, certiorari denied 296 U. S. 586, 56 S.Ct. 101, 80 L.Ed. 414; Chisholm v. Commissioner (C.C.A.2) 79 F.(2d) 14, 16, 101 A.L.R. 200; Esperson v. Commissioner (C.C.A.5) 49 F.(2d) 259. The power, however, must be reserved in the transaction itself. The Board should in order to determine the nature of a transaction examine all matters relating to the sale by the taxpayer bearing upon the deductible character of the alleged loss. Gregory v. Helvering, 293 U.S. 465, 55 S. Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; United States v. Phellis, 257 U.S. 156, 158, 42 S.Ct. 63, 64, 66 L.Ed. 180. An examination of the facts here supports the conclusion of the Board that Nicholson retained control over the stock at all times, and that he never parted with the beneficial use of it. It was all placed in his account with his brokers, and he used 500 shares as collateral to his own account. The January, 1930, dividend was turned over to him on the day it was received. The fact that Nicholson credited the amount on an old unsecured note of Morrill's does not change the result. When in March, 1930, the market price of the stock began to rise, it was immediately turned back to Nicholson, and the demand notes were canceled.

██ The second item claimed as a loss for 1929 involves the purchase by petitioners in 1920 or 1921 of 6,600 shares of stock of the Industrial Process & Engineering Company, a Delaware corporation, at 50 cents a share. The company owned a patent on a process for extracting oil from shale. It built a plant in Colorado and an experimental station below St. Louis. In 1929, Nicholson tried to find the officers of the company and was unable to do so. He wired the Secretary of State of Delaware and under date of September 12, 1931, received the following telegram: "Carbonizing Process Corporation Void April 1, 1928. Proclaimed by Governor January 1929 for Non-Payment of Taxes."

There is no evidence identifying the corporation named in the telegram with the Industrial Process & Engineering Company. The burden was upon the petitioners to show that the stock was worthless, Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212, and to point to some "identifiable event" which would definitely determine the amount of the loss. United States v. S. S. White Dental Co., 274 U. S. 398, 47 S.Ct. 598, 71 L.Ed. 1120. There was no evidence that the corporation had dissolved nor that it had failed or parted with its patents. So far as the testimony before the Board shows, the stock may have been worthless or it may have been as valuable in 1929 as it was in 1921. The Board did not err in sustaining the Commissioner.

The finding and decision of the Board upon both items claimed as deductible are supported by substantial evidence. The order of the Board of Tax Appeals is, therefore, affirmed.