C. Maxwell Brown v. Commissioner. C. Maxwell Brown and Anastasia Brown v. Commissioner.
Brown v. Commissioner
Docket Nos. 70246, 70247.
United States Tax Court
T.C. Memo 1961-36; 1961 Tax Ct. Memo LEXIS 313; 20 T.C.M. (CCH) 177; T.C.M. (RIA) 61036; February 14, 1961
*313 Held, Respondent's determination of deficiencies in accordance with net worth computation sustained with adjustments. Held further, Additions to tax under sections 294(d)(1)(B) and 294(d)(2), I.R.C. 1939, for the years 1945, 1946, and 1947 are sustained. Held further, Returns for the years 1943, 1945, 1946, and 1947 were false or fraudulent with intent to evade tax, and a part of the deficiency for each of these years was due to fraud with intent to evade tax. Held further, Returns for the years 1942 and 1944 were not false or fraudulent with intent to evade tax, and no part of the deficiency for either of these years was due to fraud with intent to evade tax. Lee S. Jones, Esq., 920 Kentucky Home Life Bldg., Louisville, Ky., for the petitioners. Hubert E. Kelly, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax and additions to tax of petitioners as follows: Additions to Tax
Sec. 294
Sec. 294
Year
Deficiency
Sec. 293(b)
(d)(1)(B)
(d)(2)
Docket No. 70246
C. Maxwell Brown
1942
$ 181.20
$ 90.60
1943
619.73
295.06
1944
993.79
496.90
$ 76.67
1946
3,571.30
1,785.65
$5.00
245.02
1947
4,336.18
2,168.09
259.99
Docket No. 70247
C. Maxwell Brown, et al.
1945
460.61
284.87
25.42
The *314 following issues are presented: 1. Whether respondent correctly determined deficiencies against petitioners for each of the years 1942 through 1947. 2. Whether any part of the deficiency for each of the years in issue was due to fraud with intent to evade tax. 3. Whether the assessment and collection of the deficiencies and additions to tax for each of the years 1942 through 1947 are barred by limitations. 4. Whether respondent properly determined additions to tax under sections 294(d)(1)(B) and 294(d)(2) of the Internal Revenue Code of 1939. Findings of Fact Some of the facts were stipulated and are so found. C. Maxwell Brown (hereinafter referred to as Brown) is an attorney who has been engaged in the practice of law in Louisville, Kentucky, since 1930. Anastasia Brown (hereinafter referred to as Anastasia) is his wife whom he married in 1933. Brown filed individual Federal income tax returns for the years 1942 through 1944, 1946, and 1947, with the collector of internal revenue for the district of Kentucky on or before March 15 of each respective succeeding year. Brown filed a joint Federal income tax return with Anastasia for the year 1945 with the collector of internal revenue *315 for the district of Kentucky on March 12, 1946. Anastasia is involved herein only because of the joint return for 1945. Brown was born on August 30, 1909, in Evansville, Indiana. He obtained his primary and secondary education in Louisville, graduating from St. Xavier High School in 1926. Thereafter, he attended the Jefferson School of Law in Louisville, graduating in 1929, and was admitted to the bar of the Commonwealth of Kentucky on September 30, 1930. In addition to his private law practice, Brown was employed as Assistant County Attorney of Jefferson County, Kentucky, from 1940 through the first week of 1946. During 1942 through 1947, Brown maintained a general practice of law primarily limited to civil matters. A substantial part of this practice was representing clients in personal injury and property damage actions, although he had municipal and corporate clients and handled zoning cases, divorce actions and estates. Brown filed no Federal income tax return for any year prior to 1940. For 1940 he filed a return reflecting no tax due and for 1941 his return reflected a tax liability of $31.36, which was paid. In 1938, Brown applied for permission to practice before the United *316 States Treasury Department. In connection therewith Brown advised the agent investigating his application that he had not filed income tax returns for the years 1934 through 1936 for the reason that he had not earned sufficient income in those years to require the filing of returns. Anastasia did not file a Federal income tax return prior to the time that she joined with Brown in the filing of the joint return for 1945. On January 4, 1950, Levoy G. Venable, a special agent with the Intelligence Division of respondent's office at Lousville, contacted Brown for the purpose of examining the income tax returns filed by him for 1942 through 1947. Pursuant to Venable's request, Brown assembled his canceled checks and bank statements, which he turned over to Venable for examination. Further, pursuant to Venable's inquiry as to the composition of the income disclosed by the returns for the years in question, Brown submitted a list of fees making up his reported receipts for each of the years 1942 through 1947. No records of original entry were submitted by Brown to Venable. After receiving the lists of legal fees reported by Brown for the years in question, Venable searched the records of *317 the County Court and the Circuit Court of Jefferson County, Kentucky, and obtained the names of various clients whom Brown had represented during the years in question. Venable checked this information against the list of fees which Brown had supplied him and found that the names of various clients were not on the list. Venable then proceeded to compute Brown's income for the years in question by the net worth plus personal expenditures method. To corroborate the net worth plus personal expenditures method computation, Venable computed Brown's net income for 1942 through 1947 by the bank deposits analysis method. In determining the income of Brown by the bank deposits analysis method, Venable eliminated from deposits the amounts of loans and clients' funds deposited by Brown. The amount of clients' funds eliminated in each of the years was as follows: Year
Amount
1942
$ 3,486.50
1943
5,675.04
1944
2,374.56
1945
2,783.64
1946
13,855.65
1947
12,334.10
The adjusted gross income determined by Venable by the bank deposits analysis method was as follows: Year
Amount
1942
$ 4,033.82
1943
6,416.24
1944
8,261.85
1945
6,494.75
1946
16,587.30
1947
13,944.96
In March 1950, Brown employed the firm of Yeager, Ford and Warren, *318 Certified Public Accountants, in connection with the examination being conducted by Venable. Brown gave Yeager and Ford, two of the senior partners of that firm, a power of attorney to represent him in connection with the examination. Thereafter, Wallace Wallen, a then junior accountant in the firm, was assigned to prepare a net worth statement on behalf of Brown for the years in question. Wallen examined Brown's bank statements, canceled checks and clients' records, contained in manila folders, and prepared a net worth statement. In so doing, Wallen utilized the information obtained from Brown's records, as well as information he secured from Venable. Wallen used the personal expenditures determined by Venable and did not make an independent search for information regarding such items. Wallen determined that there were certain fees received by Brown during the years 1945, 1946, and 1947 which were not reported on Brown's income tax returns for those years. The income of Brown as determined by Wallen, using the net worth plus personal expenditures method for each of the years in question, was as follows: Year
Income
1942
$ 3,673.90
1943
5,970.03
1944
8,261.65
1945
5,994.75
1946
16,751.93
1947
15,107.43
The *319 years and amounts of unreported fees received by Brown as determined by Wallen were as follows: Year
Amount
1945
$ 742.15
1946
6,461.07
1947
5,653.79 At the trial, some of the assets and all of the liabilities on respondent's net worth statement were stipulated by the parties. The parties further stipulated the amounts spent by Brown for insurance premiums and the amounts paid as Federal income tax for the years 1942 through 1947 as follows: Insurance
Year
Premiums
Income Tax
1942
$145.55
$ 31.36
1943
157.13
214.14
1944
398.80
601.96
1945
377.07
709.55
1946
408.34
150.00
1947
428.45
771.46
On December 31, 1941, Brown owned household furnishings valued at $700 which he disposed of in 1947. In May 1944, Brown purchased a 16-foot inboard Chris-Craft boat from Leroy G. Dropelman for $1,250. Brown paid for this boat with his personal check in that amount written on the account maintained by him at the Louisville Trust Company. He owned the boat at the end of each of the years 1944 through 1947. On March 29, 1947, Brown and Anastasia purchased a 1947 Cadillac sedan from the Standard Auto Company for $3,024.25. In connection with this purchase, Brown traded his 1941 Chevrolet which had cost him $977.59 and received a *320 trade-in allowance of $524.25. The balance of $2,500 of the purchase price was paid one-half by Brown and one-half by Anastasia. Brown sustained a loss of $453.34 on the trade-in of his 1941 Chevrolet. Brown's living expenses per check and unidentified expenditures per check for the years 1942 through 1947 were as follows: Living
Unidentified
Expenses
Expenditures
Year
per Check
per Check
1942
$2,278.67
$ 73.84
1943
2,589.80
308.67
1944
3,593.95
90.87
1945
4,286.93
124.80
1946
4,368.50
26.51
1947
7,132.22
919.38
In 1943 Brown received a 1941 Ford automobile in payment of a legal fee for performing services to the estate of Milton Rogers. The value of the Ford was $764.63. Brown failed to report the value of this car in his income tax return for 1943. In 1945 Brown received legal fees totaling $742.15 which he failed to report in the income tax return filed by him and Anastasia for the year 1945. In 1946 Brown received legal fees totaling $6,816.27 which he failed to report in his income tax return for the year 1946. In 1947 Brown received legal fees totaling $5,776.09 which he failed to report in his income tax return for the year 1947. Brown was indicted by the Grand Jury for the District Court of the United *321 States for the Western District of Kentucky at Louisville for filing false and fraudulent Federal income tax returns for 1946 and 1947 in violation of section 145(b) of the Internal Revenue Code. Upon trial by jury, he was found guilty as charged. The following net worth computation takes into account the adjustments to respondent's computation made necessary by our findings and correctly reflects Brown's net income and the net income reported by him during the years in question: C. MAXWELL BROWN
COMPARATIVE NET WORTH STATEMENT
Assets
1941
1942
1943
1944
Assets stipulated by
the parties
$13,667.03
$14,758.44
$13,612.36
$15,648.17
Household Furnish-
ings
700.00
700.00
700.00
700.00
Chris-Craft Boat
1,250.00
1947 Cadillac
Total Assets
$14,367.03
$15,458.44
$14,312.36
$17,598.17
Liabilities
Liabilities stipulated
by the parties
5,120.72
5,167.13
1,183.68
786.00
Net Worth
$ 9,246.31
$10,291.31
$13,128.68
$16,812.17
Less: Beginning Net
Worth
9,246.31
10,291.31
13,128.68
Increase in Net Worth
$ 1,045.00
$ 2,837.37
$ 3,683.49
Add: Nondeductible Expendi-
tures
Federal Income Tax
31.36
214.14
601.96
Insurance Premiums
145.55
157.13
398.80
Living Expenses per Check
2,278.67
2,589.80
3,593.95
Unidentified Expenditures per
Check
73.84
308.67
90.87
Loss on 1941 Chevrolet
Net Income Corrected
$ 3,574.42
$ 6,107.11
$ 8,369.07
Net Income per Return [1]
2,924.74
4,193.35
4,937.75
Income Unreported
$ 649.68
$ 1,913.76
$ 3,431.32
*322 C. MAXWELL BROWN
COMPARATIVE NET WORTH STATEMENT
Assets
1945
1946
1947
Assets stipulated by
the parties
$17,618.64
$30,012.15
$48,258.70
Household Furnish-
ings
700.00
700.00
Chris-Craft Boat
1,250.00
1,250.00
1,250.00
1947 Cadillac
1,774.25
Total Assets
$19,568.64
$31,962.15
$51,282.95
Liabilities
Liabilities stipulated
by the parties
993.50
1,225.18
16,463.05
Net Worth
$18,575.14
$30,736.97
$34,819.90
Less: Beginning Net
Worth
16,812.17
18,575.14
30,736.97
Increase in Net Worth
$ 1,762.97
$12,161.83
$ 4,082.93
Add: Nondeductible Expendi-
tures
Federal Income Tax
709.55
150.00
771.46
Insurance Premiums
377.07
408.34
428.45
Living Expenses per Check
4,286.93
4,368.50
7,132.22
Unidentified Expenditures per
Check
124.80
26.51
919.38
Loss on 1941 Chevrolet
453.34
Net Income Corrected
$ 7,261.32
$17,115.18
$13,787.78
Net Income per Return [1]
3,562.54 [2]
6,744.51
3,526.11
Income Unreported
$ 3,698.78
$10,370.67
$10,261.67
Brown had unreported income in the following amounts during the years in issue: Year
Amount
1942
$ 649.68
1943
1,913.76
1944
3,431.32
1945
3,698.78
1946
10,370.67
1947
10,261.67
At least a part of the deficiency for each of the years *323 1943, 1945, 1946, and 1947 was due to fraud with intent to evade tax and the return filed by Brown for each of these years was false or fraudulent with intent to evade tax. The returns for the years 1942 and 1944 were not false or fraudulent with intent to evade tax and no part of the deficiency for either of these years was due to fraud with intent to evade tax. Opinion Primarily, this case involves deficiencies in tax and additions to tax for fraud for each of the years 1942 through 1947. Petitioner's position is that respondent was not justified in resorting to the net worth method in determining his income for the years in question and, alternatively, that respondent's net worth statement does not correctly reflect petitioner's net worth and taxable income. Petitioner's first argument is that the books and records kept for Brown's business were adequate for purposes of determining his taxable income. It is well settled that even where books and records appear on their face to be adequate, respondent is not precluded from resorting to the net worth method of computing income. Holland v. United States, 348 U.S. 121, rehearing denied 348 U.S. 932; Davis v. Commissioner, 239 F. 2d 187, *324 affirming a Memorandum Opinion of this Court, certiorari denied 353 U.S. 984; Baumgardner v. Commissioner, 251 F. 2d 311, affirming a Memorandum Opinion of this Court. As suggested in Holland v. United States, supra, books and records may be "more consistent than truthful," and where, as here, there is a showing of a substantial increase in net worth in excess of reported income, without reasonable explanation of such discrepancy, the net worth method reflects on the overall accuracy of income reported on the books and on the returns. The net worth method is not itself a system of accounting but merely a technique for reconstructing a taxpayer's correct net income. Michael Potson, 22 T.C. 912, affd. sub nom. Bodoglau v. Commissioner, 230 F. 2d 336; Estate of George L. Cury, 23 T.C. 305; Morris Lipsitz, 21 T.C. 917, affd., 220 F. 2d 871, certiorari denied 350 U.S. 845; Harry Gleis, 24 T.C., 941, affd., 245 F. 2d 237. Alternatively, petitioner contends that the net worth statement determined by respondent is in error in the inclusion of some and exclusion of other assets in the statement. Petitioner also contests the determination by respondent of the amount of personal living *325 expenses. Most of the asset items and all of the liabilities have been stipulated by the parties. The remaining asset items and the personal living expenses will be discussed individually. Cash on Hand, Safe Deposit Box: Petitioner contends that he had on hand as of December 31, 1941, cash in the amount of $4,000 which was in his safe deposit box in a bank in Louisville. He argues that the respondent has failed to take this asset into consideration in the net worth statement. The evidence clearly shows that petitioner filed no Federal income tax returns prior to 1940. His return for 1940 reflected no tax due. For 1941, petitioner paid a Federal income tax of $31.36. Further, when asked as to the reasons for his failure to file such returns for the years 1934 through 1936, he stated that he had not earned sufficient income in those years to require the filing of a return. The record is silent as to any likely source from which petitioner could accumulate $4,000, and, on the evidence presented, we are unable to find that petitioner had the $4,000 for which he contends. In any event, if petitioner did have the $4,000 on December 31, 1941, it would be of no benefit to him, for he testified *326 that early in January 1950 he still had $4,000 in his safe deposit box. As far as can be determined from the record herein, the $4,000 petitioner testified he had in 1942 was the same $4,000 he testified he had in 1950. Under these circumstances, the inclusion of the $4,000 cash item in the net worth on December 31, 1941, would require its inclusion in the net worth for each of the years 1942 through 1947 and would have no effect whatsoever upon the net income determined by the net worth method. Household Furnishings: Petitioner contends that he had household furnishings on December 31, 1941, of a value of $700 to $800, which he continued to own through 1946 but which were sold in 1947 for approximately $700 to $800. Respondent did not include such an item in his net worth statement. In 1947 petitioner and his wife moved into a new house and an item labeled "Decorating and Furnishings" attributable to this new house was stipulated by the parties and appears as an asset in respondent's net worth statement for the year 1947. Anastasia testified as to the household furnishings in issue and the fact that they were sold in 1947. Apparently, petitioner owned his own house during the years *327 1942 through 1947 and an item representing such property appears in the net worth statement for each of the years in question. We are convinced that petitioner had household furnishings on December 31, 1941, which he continued to own through 1946 and that the value of such furnishings was $700. We have adjusted respondent's net worth statement to reflect such an item. Chris-Craft Boat: Petitioner does not contest the inclusion of such a boat among his assets, but contends that of the total purchase price of $1,250, he paid $250, and that the balance of $1,000 was paid by Anastasia from her own funds. The evidence does not support this contention. Included among the jumble of canceled checks which petitioner placed in evidence was a canceled check dated May 12, 1944, drawn on the Louisville Trust Company and payable to L. G. Droppelman in the amount of $1,250. The check was signed by petitioner and in the lower left hand corner was the notation: "For boat #42C955 in full." Respondent properly included the Chris-Craft boat among the assets of petitioner for the years 1944 through 1947 at a value of $1,250 and we have so found. Cadillac Automobile: For the year 1947, respondent included *328 among petitioner's assets a 1947 Cadillac automobile at a value of $3,024.25. Petitioner contends that this automobile was the property of Anastasia and was improperly included as an asset in respondent's net worth statement for 1947. Brown testified that he paid $1,250 of the purchase price. He gave in trade a 1941 Chevrolet having a value of $977.59 for which he was allowed $524.25. The balance of the purchase price ($1,250) was, according to Brown and Anastasia, paid by Anastasia out of her own funds. The entire purchase price over and above the trade-in allowance was paid in cash at the time of purchase. The records of the dealer who sold the car reflect that the sale was to Anastasia. No evidence regarding the title or registration of the car was produced. Under these circumstances, we have concluded that the respondent was in error in including the Cadillac automobile among the assets of petitioner at its full value and we have found a value to reflect the amount petitioner paid together with the amount allowed for the 1941 Chevrolet. This amount is $1,774.25 ($1,250 plus $524.25). The amount of the loss on the car traded in the amount of $453.34 ($977.59 minus $524.25) is included *329 among the nondeductible expenditures. In the final analysis, it matters not who actually owned the 1947 Cadillac. Accepting the testimony of Brown and Anastasia that each paid $1,250 in cash toward the purchase price, Brown had either an asset valued at $1,250 plus the amount allowed for the 1941 Chevrolet and a nondeductible loss for the balance of the value of the Chevrolet, or he had nondeductible expenditures of $1,250 and the total value of the Chevrolet. The final result under the net worth method is the same. Bon Air Avenue Lot: In his net worth statement, respondent included $1,000 as an asset for each of the years 1941 through 1944 representing a lot situated on Bon Air Avenue. Petitioner contends that he had no interest in this lot but that Anastasia owned a one-half interest in it. Anastasia testified that she held a one-half interest in the lot. On the income tax return filed by Brown and Anastasia for the year 1945, the sale of this lot was reported and a gain of $500 attributed to Anastasia. The return indicates this property was acquired by gift and was "owned jointly with Helen Miller." Apparently, this $500 gain item was the only income in that return attributable *330 to Anastasia. We have concluded that Brown had no interest in the Bon Air Avenue lot and have excluded it from the net worth statement set forth in our findings. In his net worth statement, respondent has classified "Non-Deductible Expenditures," as follows: Federal Income Tax Paid Insurance Premiums Paid Living Expenses per checks Unidentified Expenditures per check Loss on 1941 Chevrolet
The parties have stipulated the amounts expended for Federal Income Tax Paid and Insurance Premiums Paid in each of the years in question and this stipulation is reflected in our findings. The "Loss on 1941 Chevrolet" has been discussed in connection with the 1947 Cadillac automobile. There remain for discussion the item entitled "Living Expenses per checks" and the item "Unidentified Expenditures per check." Living Expenses per Checks: The amount of this item for each of the years in question was determined by respondent's agent from Brown's canceled checks. The agent examined each of the checks and a list of such checks, showing the date, payee and amount, was prepared for each of the years in question. The total amount for each of the years was as follows: Year
Amount
1942
$2,339.40
1943
2,868.41
1944
3,697.39
1945
4,384.22
1946
4,503.68
1947
7,369.91
The *331 petitioner introduced into evidence certain of the canceled checks contained on the list prepared by respondent, the amounts of which were included in the totals set forth above. From an examination of such checks presented by petitioner, we have concluded that certain of them represented deductible expenditures and, therefore, were erroneously included in respondent's net worth statement. The total amount and year of the checks excluded are set forth below: Year
Amount
1942
$ 60.73
1943
278.61
1944
103.44
1945
97.29
1946
135.18
1947
237.69
Petitioner's evidence regarding Living Expenses per Check consisted of an almost unintelligible conglomeration of canceled checks. Petitioner introduced Exhibits 11 through 16 which he identified as canceled checks which respondent had erroneously included in the category of Living Expenses per Checks. He testified that the totals of the canceled checks included in each exhibit were as follows: Exhibit
Total of
Number
Year
Checks
11
1942
$ 720.36
12
1943
962.53
13
1944
725.26
14
1945
834.44
15
1946
937.53
16
1947
6,296.17
The actual total amounts of the checks introduced as Exhibits 11 through 16 are as follows: Exhibit
Total of
Number
Year
Checks
11
1942
$201.36
12
1943
323.01
13
1944
122.58
14
1945
115.01
15
1946
693.17
16
1947
836.15
In *332 his testimony relating to the above canceled checks petitioner stated categorically that each of them represented contributions, taxes, office expenses or business expenses, etc. We have carefully examined each and every one of said checks and his testimony relating to the same and have given credit in the net worth statement set forth in our findings for those checks containing notations which alone or with his testimony might reasonably be determined not properly includible as Non-Deductible Expenditures. As to the remainder of such checks, his testimony was considered insufficient, not credible, or was clearly contradicted by notations on the checks. Several of the checks which we have concluded represented deductible expenditures were not contained in Exhibits 11 through 16, but were a part of Exhibit 17. In addition to the canceled checks introduced (Exhibits 11-16, inclusive), and the testimony of petitioner regarding the nature of the expenditures represented by such checks, petitioner testified that from one-third to 50 percent of the amounts of the checks payable to cash which are included in respondent's list, was used for living expenses and that the balance of such cash *333 was used by him for deductible office expense. Such testimony of itself is not sufficient to establish the deductibility of such amounts. Unidentified Expenditures per Check: Upon examination of petitioner's bank statements for the years in issue, respondent discovered that certain checks had been cashed for which there were no corresponding canceled checks among those submitted by petitioner. Respondent determined that all such checks represented nondeductible expenditures and classified them on his net worth statement under the heading set forth above. The list of such unidentified expenditures is contained in Respondent's Exhibit Z. The total amount for each year is as follows: Year
Amount
1942
$ 433.15
1943
425.27
1944
102.97
1945
144.80
1946
131.51
1947
2,262.48
Petitioner's evidence consisted of canceled checks and receipts for court costs paid by him and for monies disbursed to clients. There was no attempt by petitioner in his testimony to relate the items appearing in respondent's list of these unidentified expenditures with the canceled checks and receipts which he introduced as Exhibit 17. After an exhaustive examination of the items in this exhibit, many of which had no relation to the *334 subject of "Unidentified Expenditures per Check," we have concluded that the following total amounts were properly deductible and improperly included by respondent in this classification. Year
Amount
1942
$ 359.31
1943
116.60
1944
12.10
1945
20.00
1946
105.00
1947
1,343.10
The following total amounts in the years indicated have been determined by us to have been properly included as nondeductible expenditures: Year
Amount
1942
$ 73.84
1943
308.67
1944
90.87
1945
124.80
1946
26.51
1947
919.38
In determining petitioner's unreported income as indicated by the net worth statement set forth in our findings, we have made no adjustment for deductible expenditures. See Michael Potson, supra, footnote 1; Estate of George L. Cury, supra, footnote 4. We hold that petitioner has failed to overcome the presumptive correctness of respondent's determination, as adjusted by our findings, for each of the years in question. Accordingly, the deficiencies determined by respondent for the years 1942 through 1947, as adjusted by our findings, are sustained. Fraud: Respondent has determined additions to tax for fraud under section 293(b) of the Internal Revenue Code of 1939 for each of the years in issue. The parties agree that *335 assessment of deficiencies for all of the years is barred unless the returns for those years were false or fraudulent with intent to evade tax within the meaning of section 276(a) of the 1939 Code. The respondent bears the burden of proving the requisite fraud and the evidence must be clear and convincing. The fact that respondent has determined a greater tax liability than reported and such determination is sustained does not tend to establish fraud. An intent or purpose to evade tax is essential. Estate of Louis L. Briden, 11 T.C. 1095, 1133, affd. sub nom. Kirk v. Commissioner, 179 F. 2d 619; Harold B. Franklin, 34 B.T.A. 927, 935; James Nicholson, 32 B.T.A. 977, affd., 90 F. 2d 978. It is recognized that the consistent and substantial understatement of income over a period of years may constitute clear and convincing evidence of fraud. Holland v. United States, supra. However, where the understatement of income is established only by reason of petitioners' failure to sustain their burden of overcoming the presumptive correctness of respondent's determination based upon the net worth method there must be some independent evidence from which fraudulent intent can properly *336 be inferred. In the instant case the net worth statement in our findings reveals that there were substantial and consistent understatements of income over a period of years. In addition to this, the evidence clearly establishes that petitioner failed to report various fees received by him aggregating substantial amounts in each of the years 1943, 1945, 1946, and 1947. Petitioner offered no explanation as to his failure to report the receipt of the fee in 1943, and no reasonable or credible explanation as to his failure to report the fees received in 1945, 1946, and 1947. His conviction by a jury of filing false and fraudulent Federal income tax returns for the years 1946 and 1947 further supports our conclusions regarding those years. Accordingly, we hold that a part of the deficiency for each of the years 1943, 1945, 1946, and 1947 was due to fraud with intent to evade tax and petitioner is liable for additions to tax under section 293(b) for each of these years. We further hold that the returns filed by petitioner for each of the years 1943, 1945, 1946, and 1947 were false or fraudulent with intent to evade tax and the assessment and collection of the deficiencies and additions to *337 tax for those years is not barred by limitations. With regard to the years 1942 and 1944, it is only because of the failure of petitioner to overcome the presumptive correctness of respondent's determination that we have sustained the deficiencies, as adjusted, for those years. We find no other or independent evidence regarding those years from which fraudulent intent can properly be inferred. Accordingly, we hold that the respondent has failed to establish by clear and convincing evidence that any part of the deficiency for either of the years 1942 or 1944 was due to fraud with inent to evade tax, and petitioner is not liable for any additions to tax under the provisions of section 293(b) of the 1939 Code. We further hold that the returns filed by petitioner for the years 1942 and 1944 were not false or fraudulent with intent to evade tax and the assessment and collection of the deficiency for each of the years 1942 and 1944 are barred by limitations. The final question is whether respondent properly determined additions to tax under section 294(d)(1)(B) and section 294(d)(2) of the Internal Revenue Code of 1939. The addition under 294(d)(1)(B) was based on delinquency in payment *338 of an installment of estimated tax due on June 15, 1946. In the absence of any evidence to the contrary, and in view of the fact that respondent has not determined any additions to tax for failure to file declarations of estimated tax under section 294(d)(1)(A), it may be assumed that declarations of estimated tax were filed for each of the years involved and the principle announced in Commissioner v. Acker, 361 U.S. 87, is not applicable. Petitioner introduced no evidence regarding the additions under either of these sections and has not discussed them on brief. However, we have found that the assessment and collection of deficiencies for the year 1944 are barred by limitations. The assessment and collection of additions to tax under section 294(d)(2) for the year 1944 are likewise barred. Additions to tax under sections 294(d)(1)(B) and 294(d)(2) for 1945, 1946, and 1947 are sustained, the amounts of the additions under section 294(d)(2) to be determined under the Rule 50 computation. On brief, petitioners have asserted that fees unreported in the years in question were reported in 1949, and argue that if it is decided such fees are taxable in the years involved, they are entitled *339 to an adjustment based on the tax paid on the same income in the year 1949. It is sufficient to note that the taxable year 1949 is not before us. Accordingly, discussion of this contention is not necessary. Decisions will be entered under Rule 50. Footnotes
1. Amounts reported in return as "adjusted gross income." ↩
2. Excludes amount of $500 reported in return as income of Anastasia Brown.↩