Estate of Roy E. Hughes, Deceased, Alice T. Hughes, Executrix, and Alice T. Hughes v. Commissioner.
Estate of Hughes v. Commissioner
Docket No. 944-65.
United States Tax Court
T.C. Memo 1969-54; 1969 Tax Ct. Memo LEXIS 245; 28 T.C.M. (CCH) 304; T.C.M. (RIA) 69054; March 17, 1969, Filed *245 Assessment and collection of deficiencies barred by statute of limitations. Neither fraud nor 25-percent omission of gross income proved. Alice T. Hughes, pro se, Kingsland, Ga. John Patrick McElroy, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in the petitioners' income tax and additions to tax for the years 1953 through 1959 as follows: *11 Year
Deficiency
Additions to Tax
Sec. 293(b)I.R.C.1939
Sec. 6653(b)I.R.C.1954
Sec. 294(d) (1) (A)I.R.C. 1939
1953
$1,510.57
$755.28
$139.03
1954
1,429.26
$714.63
152 .22
1955
1,747.80
873.90
1956
1,764.03
882.02
1957
1,878.80
939.40
1958
1,283.09
641.55
1959
869.04
434.52
The issues are (1) whether petitioners failed to report a portion of the fees for blood tests performed at the Kingsland Clinical Laboratory in each of the years 1953 through 1959; (2) whether respondent correctly made certain adjustments to petitioners' income during the years 1953 through 1959 involving automobile depreciation (1953 through 1959), automobile *247 expenses (1954 through 1959), a dependency exemption deduction for Roy E. Hughes' grandmother (1955 through 1959), and additional interest income for the years 1954 through 1957; (3) whether any part of the underpayment for each of the years 1953 through 1959 was due to fraud within the meaning of section 293(b) of the 1939 I.R.C. or section 6653(b) of the 1954 I.R.C.; (4) whether petitioners are liable for additions to tax for the years 1953 and 1954 under section 294 (d) (1) (A) of the 1939 I.R.C. for failure to file declarations of estimated tax; and (5) whether any of the years 1953 through 1959 are barred by the statute of limitations. Findings of Fact Some of the facts were stipulated and they are so found. Roy E. Hughes and Alice T. Hughes were residents of Kingsland, Georgia, at the time the petition in this case was filed. They filed joint Federal income tax returns for the years 1953 through 1959 with the district director of internal revenue, Atlanta, Georgia. Roy E. Hughes died testate on August 5, 1966. Roy completed three years of premedical studies at Texas A. & M University. He finished his premedical studies at Tulane University and *248 completed three years in the study of medicine at Tulane Medical College. He moved to Kingsland, Georgia, in 1950 where he and his wife resided during all of the years here involved. Prior to 1950 Roy was an instructor in the pathological laboratory at St. Lukes Hospital in Jacksonville, Florida. In 1950 Roy, who was a qualified laboratory technician approved by the Georgia Department of Public Health, and Dr. R. Roy McCollum, Jr., organized the Kingsland Clinical Laboratory with Dr. McCollum as the medical director and Roy as laboratory technician and manager. The laboratory made premarital blood tests which are required by the State of Georgia. Kingsland, Georgia, is located four miles north of the Georgia-Florida line, some 35 miles from Jacksonville, Florida. The marriage laws of Florida required a waiting period for all marriages, while the laws of Georgia required no waiting period for couples of legal age. Roy performed blood tests, collected the fees, and handled all the affairs of the 305 business. On occasion, when Roy was sick or absent from the laboratory, Alice would perform the blood tests. Dr. McCollum provided space in his building for the laboratory, paid *249 for all the utilities, and signed the blood test certificates. He also provided living space in the building for Roy and his wife. The State of Georgia requires that a licensed physician certify all tests. The arrangement between Dr. McCollum and Roy was that a fee of $6 would be charged per person for a blood test, with one-half of the fee going to Dr. McCollum and the balance to Roy. After Roy died in 1966, Alice, who was legally qualified to perform blood tests, continued to operate the laboratory under the same arrangement with Dr. McCollum. The laboratory would only charge $1 to execute a Georgia blood certificate (referred to as a transfer certificate) for persons whose blood tests had been performed in Florida and were recorded on Florida forms. Fees for these transfer certificates were also shared equally by Dr. McCollum and the petitioners. Patients of Dr. McCollum were given blood tests in the laboratory without charge and, similarly, local couples were sometimes given blood tests without the usual fee. During the years 1953 through 1959 the names of persons receiving blood tests in the laboratory were recorded by petitioner in a ledger book, together with the date on *250 which such tests were performed. None of the records of the laboratory for this period was available at the trial of this case. During most of the period here involved Dr. McCollum's share of the laboratory fees was deposited in the Kingsland Clinical Laboratory account at the State Bank of Kingsland. Roy was the only individual entitled to draw against the account. Payment was made to Dr. McCollum by a check, usually monthly, drawn by Roy on the laboratory account. Periodically Dr. McCollum examined the ledger book kept by petitioners in order to determine the accuracy of his share of the blood test fees. Sometime in 1958 Roy opened a second bank account (Roy E. Hughes, Lab. Account) at the State Bank of Kingsland which operated as a "transferral account." Roy made weekly deposits into this second account and at the end of each month transferred funds from this second account to the Kingsland Clinical Laboratory account. This practice continued until September 1959 at which time no further deposits or transferrals were made to the Kingsland Clinical Laboratory account. Roy and Alice reported total laboratory receipts on their joint income tax returns for the years 1953 through *251 1959 in the following respective amounts: $9,997.52, $13,580, $7,287.42, $7,616, $6,793.86, $10,144.10, and $12,467.72. They deducted from the above total laboratory receipts the following amounts purporting to be commissions or fees paid to Dr. McCollum in the following years as noted: In 1953, $4,698.76; in 1954, $6,800; in 1958, $5,072.05; and in 1959, $6,233.86. Roy E. Hughes was indicted for tax evasion covering the years 1955 through 1959, and after a jury trial he was found not guilty for all of the years involved. Respondent determined that the total fees collected by the Kingsland Clinical Laboratory for the years 1953 through 1959 were as follows:
1
2
3
4
5
Year
Deposits made in labo- ratory account (fees due Dr. McCollum)
Fees kept bypetitioners
Fees not splitwith Dr. Mc-Collum
Total
1953
$11,119.52
$11,119.52
$22,239.04
1954
13,357.00
13,357.00
$ 5
26,719.00
1955
14,574.84
14,574.84
6
29,155.68
1956
14,962.00
14,962.00
22
29,946.00
1957
14,501.50
14,501.50
15
29,018.00
1958
9,984.10
9,984.10
58
20,026.20
1959
9,872.00
9,872.00
91
19,835.00
Respondent then determined that petitioners understated *252 their income on their joint returns for the years 1953 through 1959 in the following amounts: 306 Understated income:
Petitioners' fees as
reconstructed by
respondent (col-
Less: Deduction
umns 3 and 4
claimed for fees
above) less
Total fees
paid to Dr. Mc-
Net fees re-
net fees re-
Year
reported
Collum
ported
ported
1953
$ 9,397.52
$4,698.76
$4,698.76
$6,420.76
1954
13,580.00
6,800.00
6,780.00
6,582.00
1955
7,287.42
7,287.42
7,293.42
1956
7,616.00 7,616.00
7,368.00
1957
6,793.86
6,793.86
7,722.64
1958
10,144.10
5,072.05
5,072.05
4,970.05
1959
12,467.72
6,233.86
6,233.86
3,729.14
Opinion The first issue to consider is whether the assessment and collection of tax for any of the years 1953 through 1959 is barred by the statute of limitations. Respondent recognizes that all of the years before us are barred by the statute of limitations, section 275(a) of the 1939 Code and section 6501(a) of the 1954 Code, unless he can show that the petitioners' return for the particular year was false or fraudulent with intent to evade tax, section 276(a) of the 1939 *253 Code and section 6501(c) of the 1954 Code, or, in the case of the years 1958 and 1959, that the petitioners omitted gross income in excess of 25 percent of the amount of gross income stated in their returns for each of those two years. Sec. 6501(e) of the 1954 Code. The burden of proof with respect to fraud is on the respondent and he must prove fraud by clear and convincing evidence. E.S. Iley, 19 T.C. 631 (1952). It is not enough to establish fraud merely by showing understatements of income, James Nicholson, 32 B.T.A. 977 (1935) affd. 90 F. 2d 978 (C.A. 8, 1937), and this is particularly true where, as here, respondent attempts to reconstruct petitioners' income on certain assumptions of questionable validity. We recognize, of course, that repeated understatements of income are evidence from which fraud may be inferred, Nathan Bilsky, 31 T.C. 35 (1958), but there must be something more in order to meet the clear and convincing test. John Marinzulich, 31 T.C. 487 (1958). There must be independent evidence which shows a willful intent to evade tax. See Spies v. United States, 317 U.S. 492 (1943). *254 Apart from the purported understatements of income over a period of years there is little or no independent evidence in this record to show fraud clearly and convincingly. Respondent mentions absence of records and the educational background of Roy and his wife, and he has also singled out some expenditures (mostly for new automobiles) over the years 1953 through 1959. We have considered all of these factors and find them singularly unpersuasive as badges of fraud in the context of this case. Much confusion surrounds the unavailability of records. All we are told is that a list of the blood tests performed in the laboratory was kept in an informal "ledger" and that the revenue agent was told by Roy in October 1959 that only the current "ledger" was available (showing blood tests for September, October, and some of August 1959). We know from the record that Dr. McCollum and Roy examined the "ledger" at least once a month (and occasionally more often) in order to compute their respective shares of the fees, and for all we know this may have been the only purpose for the "ledger." In connection with the revenue agent's testimony we must also consider Alice's testimony that records of *255 some sort were available at Roy's criminal trial in 1963 and that "After the trial when my husband was cleared of this we no longer kept any records." The evidence in support of respondent's determination of income by the indirect method used is quite unsatisfactory. Bank records were introduced in evidence and checks drawn on the accounts payable to Dr. McCollum during the years 1957-1959 were identified; but there is no reliable evidence of the amounts paid to Dr. McCollum during the years 1953-1956. The only evidence of the number of blood certificates recorded was a transcript made from the county records by the revenue agents, which recorded only the number of 307 certificates on file. The county records were not available and the agent's transcript does nothing to identify or describe the certificates. If, as respondent contends, the deposits in the Kingsland Laboratory account represented Dr. McCollum's share of the laboratory fees, there is no evidence to indicate what Roy did with his share of the fees. We also note from the record that Roy systematically made deposits of fees every few days over the entire period here involved in the Kingsland Clinical Laboratory *256 account and that payments to Dr. McCollum were made by check drawn on this account. An open and easily discoverable arrangement of this kind is inconsistent with a purported scheme to conceal the true extent of laboratory fees over the years. As for the isolated expenditures over the seven-year period which respondent calls to our attention, they prove nothing. We are puzzled as to respondent's purpose in parading these expenditures before us as indicia of fraud. In fact, respondent lamely informs us on brief that these isolated expenditures "should not be considered as another indirect method used by respondent to prove unreported income, by and of themselves, but should be used in conjunction with the arguments raised above" In essence, we are left on the fraud issue with nothing more than the purported understatements of income. Respondent's indirect method of computing petitioners' understatements of income tends to weaken their usefulness on the fraud issue. Respondent computed Dr. McCollum's fees from the laboratory [1] then assumed that Roy's income from the laboratory equaled the doctor's share. Apart from this inference there is nothing to show that Roy and Alice actually *257 received these amounts. There is no evidence of bank accounts or any significant asset acquisitions which would corroborate the inferences that Roy's fees equaled those that went to the doctor. There is also some evidence that when Roy would receive bad checks for blood tests he would stand the loss himself and account to the doctor in full for the blood test. We also have the testimony of Dr. McCollum that "I have had the feeling once or twice that I was a little bit overpaid, maybe he [Roy] was trying to make me feel like the lab was doing more." Even if some understatements did in fact exist, they do not, when viewed in the context of the entire record, indicate by themselves a willful intent to evade tax. We have examined the record carefully and we are not persuaded that the evidence is sufficient to establish fraud. It may perhaps arouse suspicions of fraud, but, as we stated in L. Glenn Switzer, 20 T.C. 759, 765 (1953), "Mere suspicion of fraud and mere doubts as to the intentions of the taxpayer are not sufficient proof of fraud. *258 " Respondent argues in the alternative that in the years 1958 and 1959 petitioners omitted gross income in excess of 25 percent of their reported gross income and that, under the provisions of section 6501(e) of the 1954 Code, these two years are not barred by the statute of limitations. Respondent has the burden of showing that petitioners omitted the requisite 25 percent of their reported gross income in each of the years 1958 and 1959. C. A. Reis, 1 T.C. 9 (1942), affd. 142 F. 2d 900 (C.A. 6, 1944). We do not believe he has done so. We have expressed our doubts as to the accuracy of the method adopted by respondent to compute petitioners' understatements of income through an indirect method based upon another taxpayer's gross income from the laboratory. No purpose would be served to again rehearse the infirmities of this indirect approach in the peculiar context of this case. We find that respondent has not met his burden. We hold, on the basis of this record, that assessment and collection of tax for each of the years 1953 through 1959 is barred by the statute of limitations. Decision will be entered for the petitioner. 308 Footnotes
1. The computation was based on bank records of the laboratory account which Roy maintained throughout the years before us.↩