LEONARD D. POOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Poor v. Commissioner
Docket No. 10396-82.
United States Tax Court
T.C. Memo 1984-3; 1984 Tax Ct. Memo LEXIS 669; 47 T.C.M. (CCH) 811; T.C.M. (RIA) 84003; January 3, 1984. *669 Held, petitioner is liable for addition to tax under sec. 6653(b), I.R.C. 1954, for 1976, but he is not liable for additions under that section for 1974 and 1975. Leonard D. Poor, pro se. Patrick E. Whelan, for the respondent. WHITAKER
*670 MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: The notice of deficiency issued to petitioner in this case determined that, while there were no deficiencies due from petitioner, [1] additions to tax under section 6653(b)[2] were due in the following amounts: Year
Sec. 6653(b) Addition
1974
$4,732.44
1975
5,622.95
1976
6,637.42
The sole issue for decision is whether petitioner is liable for these additions to tax. Leonard D. Poor (petitioner) resided in New Jersey at the time his petition was filed. Until May 13, 1977, he was employed with Bell Telephone Laboratories, Inc., as a technician designing communication circuits. Petitioner and his wife timely filed joint returns for the years at issue, reporting the *671 following amounts as adjusted gross income: Year
Adjusted Gross Income
1974
$24,277.35
1975
26,861.99
1976
29,020.58
He retired on May 13, 1977, at which time his salary was $25,000. On that date, respondent's special agent called at petitioner's house while petitioner was at work and left his telephone number with petitioner's wife. [3]
Petitioner and his wife had maintained 81 savings accounts with 28 banks [4] during the taxable years 1974, 1975 and 1976, all but two of which were in the joint names of petitioner and Mrs. Poor, and these two were solely in Mrs. Poor's name. They also jointly owned seven bonds and debentures during the years at issue which generated interest income. The amounts of interest income reported on their original returns and amounts actually earned [5] during the years at issue are as follows: Interest Reported
Total
Year
on Original Return
Interest Earned
1974
$483.10
$23,169.33
1975
1,227.50
25,953.91
1976
1,253.49
29,739.15
At about the time of his retirement, petitioner *672 devised a retirement budget and made arrangements to receive periodic interest checks from his banks. On June 10, 1977, two special agents of respondent again called on petitioner and questioned him about his 1974 return. On June 20, 1977, he filed three amended joint returns which reported additional interest income as follows: Year
Amount Underreported
1974
$23,289.90
1975
29,137.50
1976
29,419.51
On each amended return it is stated that the additional income "represents the estimated interest on overlooked bank books." [6] The amended returns reflected additional income tax liabilities *673 for 1974, 1975 and 1976 in the amounts of $9,464.88, $11,245.91 and $13,274.85, respectively. Payments for these additional taxes were submitted with the amended income tax returns on June 20, 1977, and accepted by the Internal Revenue Service. Petitioner subsequently was billed $2,649.30 for accrued interest on the additional tax reported on the amended returns. The accrued interest on the underpayments was paid, $1,540.55 on January 5, 1978, and $1,108.75 on March 8, 1982. The combined interest income reported by petitioner on his original and amended returns for the years at issue exceeds the total amount of interest income actually received by petitioner in the following amounts: Year
Excess
1974
$603.67
1975
1,411.09
1976
933.85
*674 On March 31, 1981, petitioner was charged with willfully and knowingly attempting to evade and defeat taxes for the years 1974, 1975 and 1976, in violation of section 7201. With respect to the 1976 charges, petitioner pled guilty on April 10, 1981; on May 18, 1981, the charges with respect to 1974 and 1975 were dismissed. On April 2, 1982, a notice of deficiency was issued to petitioner. It was addressed to petitioner alone and did not name petitioner's wife. The notice determined that, although no deficiencies were due from petitioner, petitioner was liable for fraud additions to tax under section 6653(b) for the three years at issue. Petitioner thereafter filed a timely petition in this Court, in which he claimed that, (1) because there were no deficiencies, there was no underlying claim to which a fraud addition could be attached, and therefore no additions applied; (2) in the prior criminal proceeding, charges relating to 1974 and 1975 were dismissed, so that no fraud addition was appropriate for those years; (3) the fraud additions were added to an innocent spouse's joint returns; and (4) the statute of limitations has expired. OPINION In order to sustain his determination *675 as to the fraud addition to tax for the years at issue, respondent must prove, by clear and convincing evidence, that some part of the underpayments for those years was due to fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; e.g., Stone v. Commissioner,56 T.C. 213, 220 (1971); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). Respondent need not prove the precise amount of underpayments resulting from fraud, but only that there was some underpayment and that some part of it was attributable to fraud. Otsuki v. Commissioner,supra at 105; Estate of Brame v. Commissioner,25 T.C. 824, 831-832 (1956), affd. 256 F.2d 343 (5th Cir. 1958). The issue of fraud poses a factual question which is to be decided on an examination of all the evidence in the record. Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Stone v. Commissioner,supra at 224; Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud is an actual intentional wrongdoing, and the intent required is the *676 specific purpose to evade a tax believed to be owing. E.g., Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Estate of Pittard v. Commissioner,69 T.C. 391, 400 (1977); McGee v. Commissioner,61 T.C. 249, 256-257 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). This intent may be inferred from circumstantial evidence. Powell v. Granquist,supra at 61; Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. 578 F.2d 1383 (8th Cir. 1978); Beaver v. Commissioner,55 T.C. 85, 92-93 (1970).
In support of his burden of proof with respect to the year 1976, respondent claims that petitioner is estopped from denying fraud because of his criminal conviction under section 7201 for that year. The law is clear that a criminal conviction based upon an indictment charging a willful attempt to evade or defeat tax necessarily carries with it the ultimate factual determination that the underpayment was due to fraud. Amos v. Commissioner,43 T.C. 50 (1964), *677 affd. 360 F.2d 358 (4th Cir. 1965). The result is the same where the taxpayer was found guilty of a section 7201 violation by virtue of his guilty plea. Goodwin v. Commissioner,73 T.C. 215 (1979); Arctic Ice Cream Co. v. Commissioner,43 T.C. 68 (1964). Thus, petitioner is estopped from denying the existence of fraud for the year 1976. [7]
Under section 6653(b), the fraud addition is equal to 50 percent of the underpayment. Section 6653(c) defines an underpayment as the total amount of all deficiencies if a return was timely filed. For this purpose any amount of additional tax shown on an amended return filed after the due date of the return is a deficiency. Section 301.6653-1(c)(1), Income Tax Regs. Under section 6211, a deficiency is defined as the correct tax imposed minus the amount shown on the return. In view of petitioner's concessions in his amended returns and the stipulation in this case, the amount of the underpayment for 1976 is established. The fraud addition applies to this amount. Respondent's *678 burden for 1974 and 1975 is not so easily met, however, for petitioner's conviction under section 7201 for 1976 does not estop him from denying fraud for the other years with respect to which charges were dismissed. See Wittenberg v. United States,304 F. Supp. 744 (D. Minn. 1969). Moreover, we are constrained by the rule that, while a substantial omission from income may constitute an indicium of fraud, respondent cannot meet his burden of establishing fraud merely by showing that petitioner's income was underreported; a mere understatement of income, standing alone, does not establish fraud. Webb v. Commissioner,supra at 378-379; Estate of Beck v. Commissioner,56 T.C. 297, 363 (1971); Otsuki v. Commissioner,supra at 106; Switzer v. Commissioner,20 T.C. 759, 764-765 (1953); Nicholson v. Commissioner,32 B.T.A. 977 (1935), affd. 90 F.2d 978 (8th Cir. 1937). Were the rule otherwise, all taxpayers against whom deficiencies were determined would be subject to imposition of the fraud addition. Nicholson v. Commissioner,supra,32 B.T.A. at 989. *679 This rule applies even though the understatements might occur over a period of years. Switzer v. Commissioner,supra at 764-765; Drieborg v. Commissioner,225 F.2d 216 (6th Cir. 1955), affg. in part a Memorandum Opinion of this Court.This case is appealable to the Third Circuit. We note that court's opinion in Shahadi v. Commissioner,266 F.2d 495 (3d Cir. 1959), affg. 29 T.C. 1157 (1958), but we find that case to be clearly distinguishable on its facts. [8] Therefore, in this case the existence of fraud with intent to evade tax must be affirmatively and independently established by additional evidence of fraudulent behavior. Drieborg v. Commissioner,supra at 218; Estate of Beck v. Commissioner,supra at 363. The facts *680 here lead us to believe that, while he has been clearly disorganized in the preparation of his returns, [9] petitioner's behavior stops short of being fraudulent. He is a man of limited education who probably was under substantial emotional pressures both at home and at work while he was preparing the returns at issue. He undoubtedly was under a duty to maintain adequate records of his interest income or in lieu thereof to obtain correct information concerning his interest income before he filed his returns. But respondent has not convinced us by clear and convincing evidence that petitioner's failure to comply with that duty was because of a willful or fraudulent intent. See Switzer v. Commissioner,supra at 764. Other than the underpayment of taxes, there was no behavior here that clearly exhibited fraudulent intent. Petitioner's *681 undisputed testimony was that, as soon as he discovered his earlier mistake, he took steps to correct it by amending his returns and paying (overpaying, in fact) the underpayments and much of the interest attributable thereto. While this prompt payment would not necessarily erase a prior fraudulent intent, it is at least consistent with petitioner's explanation. We also are uninclined to find even an inference of fraudulent intent during 1974 and 1975 from petitioner's conviction under section 7201 for 1976. Moreover, such an admission with respect to the later year would not necessarily compel us to believe that a fraudulent intention existed during the earlier years, since it is highly possible that petitioner did not become aware of his understatements until after they had occurred for two years. To be sure, the evidence is not exactly clear as to the timing of the amended returns in relation to the visits by respondent's agents. Respondent would have us believe that petitioner only filed them because he was about to be audited. However, the uncontroverted testimony of petitioner was that he discovered the underpayments shortly after his retirement and took steps toward *682 filing amended returns before his meeting with the agents on June 10, 1977. He further stated that he did not actually know that respondent's agents had visited his house on May 13, 1977. But, even if petitioner's investigation into his earlier records were motivated in part by the agent's visit to his house on May 13, 1977, this does not definitively prove that he actually knew during the years at issue that there were underpayments and willfully disregarded them. It is equally possible that news of the visit simply motivated petitioner to reexamine the information supplied in his prior returns. While the circumstances surrounding petitioner's underreporting of income and the filing of amended returns are inconclusive, mere suspicion of fraud or doubt as to the taxpayer's intentions are not sufficient proof of fraud. Respondent's burden is not met by means of speculation. Switzer v. Commissioner,supra at 765. Therefore, respondent has not met his burden of proving that petitioner's underpayments for 1974 and 1975 were attributable to fraud. We hold for petitioner with respect to those years. Decision will be entered under Rule 155.
Footnotes
1. After he filed his original returns, but before respondent issued the notice of deficiency, petitioner filed amended returns which reported previously unreported interest income. Therefore, by the time the notice of deficiency was issued, petitioner had already paid his deficiencies in taxes for the years at issue. ↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. Petitioner testified that he did not return the agent's call because he thought that it was part of a practical joke.↩
4. Petitioner's explanation for this large number of bank accounts was that he and his wife opened accounts in order to receive gifts from the banks for opening new accounts. They did not later close accounts and over the years kept opening new ones. ↩
5. These rather large sums resulted from petitioner's gradual accumulation of more than $400,000. Petitioner testified that, because petitioner and his wife had no children or other large expenses, and his wife had worked for about 18 years, they had been able to deposit most of petitioner's salary in bank accounts.↩
6. Petitioner's explanation for his failure to report the correct amount of interest on his original returns was that his home life was very disorganized. This was, he testified, due to the fact that his wife was emotionally distressed to the point that she was under medication. Petitioner believes that his wife may have thrown mail away unbeknownst to him. He also indicated that he was under a great deal of pressure to work to learn a new technology. Because his home life was so confused and his work so preoccupying, he testified that it did not even occur to him that he might not have received all of his 1099 forms from his banks.↩
7. Because petitioner is estopped from denying fraud for 1976, we need not address the arguments raised in his petition.↩
8. The taxpayer there was a practicing attorney who was "versed in the law, and knew what was expected on him by his Government." Moreover, the Court there found much of the testimony in that case to be "utterly incredible." Shahadi v. Commissioner,29 T.C. 1157, 1166, 1169 (1958), affd. 266 F.2d 495↩ (3d Cir. 1959).
9. Although we believe that petitioner's behavior in the underreporting of his income may have been negligent, respondent did not in the notice of deficiency or elsewhere make an alternative claim that petitioner is liable for additions to tax under sec. 6653(a)↩. Therefore, we cannot order the payment of such additions here.