*Decision will be entered under Rule 50.*

ALBERT N. SHAHADI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALBERT N. SHAHADI AND JOSEPHINE SHAHADI, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49197, 52841, 52842. Filed March 24, 1958.

*Robert M. Taylor, Esq.,* and *George P. Walker, Esq.,* for the petitioners.

*Max J. Hamburger, Esq.,* for the respondent.

OPINION.

VAN FOSSAN, *Judge:* Respondent determined, on the basis of a net worth computation, that petitioners failed to report a total of $102,277.74 during the years 1944 to 1950, inclusive. Petitioners have accepted the correctness of all items appearing in that computation with the exception of cash on hand as of December 31, 1943, and the item of "Jewelry and Furs." They also challenge respondent's right to resort to the net worth and expenditures method of reconstructing their income, claiming the books and records which they maintained during the years in issue were adequate. In addition, they contend respondent's failure to show the source of such disputed income precludes a finding that it is taxable. Finally, they claim the years 1944 to 1947, inclusive, are barred by the statute of limitations.

Petitioner personally destroyed his books and records for the years 1944 to 1948, inclusive, prior to his first interview with respondent's agents. Moreover, an examination of the records maintained for the years 1949 through 1950 disclosed that they failed to reflect substantial cash expenditures made during that period. It is well settled that, under circumstances such as these, respondent is justified in resorting to the net worth method of reconstructing income. Sec. 41, I. R. C. 1939; *Holland* v. *United States,* 348 U. S. 121 (1954); *United States* v. *Johnson,* 319 U. S. 503 (1943); *Harry Gleis,* 24 T. C. 941 (1955), affd. 245 F. 2d 237 (C. A. 6, 1957); *Morris Lipsitz,* 21 T. C. 917 (1954), affd. 220 F. 2d 871 (C. A. 4, 1955), certiorari denied 350 U. S. 845 (1955); *Louis Halle,* 7 T. C. 245 (1946), affd. 175 F. 2d 500 (C. A. 2, 1949), certiorari denied 338 U. S. 949 (1950).

Petitioners next argue that the net worth computation and the deficiencies determined thereby are incorrect because the computation fails to take into account accumulated cash on hand as of December 31, 1943, in the amount of $70,000. They claim that as of that date, the starting point of respondent's net worth computation, petitioner had $70,000 cash in a safe-deposit box, which sum was derived from the following sources: A cash gift of $30,000 from his mother, made in either December 1924 or January 1925; a cash gift of $20,000 from his father, made in late 1931; and $20,000 accumulated in cash from earnings, gifts, and inheritances over a period of years prior to 1944.

Because of the nature of petitioners' claim we have made detailed findings of fact with respect to the financial histories of both the petitioner and his parents. In the light of these findings the claim of a $70,000 cash accumulation is utterly incredible. We do not deem it necessary to lengthen our discussion by a review of those findings; rather, we shall limit ourselves to a brief summary of a few of the reasons underlying our disbelief in and rejection of petitioners' story.

At the outset, we note our disbelief in the claim that Nicola and Mary Shahadi were able to accumulate the cash hoard of $50,000 which is attributed to them. Be it remembered that Mary never filed a tax return and that Nicola, prior to 1931, filed for only 3 years, the amount of tax returned being negligible. The first gift of $30,000 was allegedly made by Mary 18 years after the Shahadis had progressed from the status of door-to-door peddlers to that of small shopkeepers. It was during that 18-year period that Mary Shahadi, the alleged donor, suddenly found herself the sole support of the 7 members of the Saseen family and the 3 members of her own family. For 6 of those years she supported her husband, who was interned in Europe. She also paid the expenses in college of the petitioner and his cousin. Not until 1920, only 4 years prior to her alleged gift, was part of that burden lifted from her shoulders. Yet further, in 1923, approximately 1 year before the crucial date, she found it necessary to incur a complicated financial liability involving the payment of monthly installments of $44 in order to assume a mortgage of $4,000. Such facts are inconsistent with the possession of a $30,000 cash hoard as of December 1924. The probate record upon Mary's death in 1927 is entirely confirmatory of this conclusion, the executor's report showing $300 in personal property and $4,000 in realty. Nicola's situation is no better. In early 1929 his financial difficulties had progressed to the point where he found it necessary to borrow the full cash surrender value of his life insurance, to incur a $1,800 loan on a personal note, and finally, in April of that year, to file a petition in bankruptcy wherein he listed cash assets of $24.82. To find that but 2 years later, in the midst of one of the greatest economic crises our country has experienced, with attendant shortage of money, Nicola could have accumulated and assumed the role of donor with respect to $20,000 cash is beyond belief.

Petitioner's actions were equally inconsistent with a cash possession of any such magnitude. His tax delinquencies with respect to local real estate, the continuing monthly installments of $44 on the Richmond Avenue property through 1933, and the redemption of all his savings bonds and the related borrowing of $3,500 in order to purchase an interest in the Racing Association—all these are certainly not the acts of a man with large accumulations of cash. Further, we note that petitioner's evidence as to this item consists almost solely of his uncorroborated self-serving testimony. The further claim that, prior to 1943, $20,000 was accumulated by petitioner from gifts, inheritances, and savings finds no support in this record. Suffice it to say, we have found as a fact that petitioner never received a gift of $30,000 from his mother nor of $20,000 from his father, and that he did not possess an accumulated cash hoard, as of December 31,

1943, of $70,000 nor did he have cash on hand as of that date in excess of that found by respondent in his computation.

Petitioners next contest the item of *"Jewelry and Furs" as it appears* in the net worth computation, contending that those assets were received during the net worth period as gifts from the mother of Josephine Shahadi. Respondent, on the other hand, claims the individual pieces of jewelry and furs which made their appearance during the years in issue were derived from income sources and are properly includible in the computation. To support their claim petitioners submitted the affidavit of Josephine Shahadi, wherein she listed gifts of furs and jewelry allegedly received from her mother during 1944, 1947, 1950, and 1951. In addition, Josephine Shahadi testified generally with respect to that affidavit. The greater portion of her testimony was concerned with the attempted correction of what was termed the mistaken inclusion of two items in that affidavit. The remainder of her testimony was vague and inconclusive. We are of the opinion that petitioners have not carried their burden of proof with respect to this item, and we therefore sustain respondent's determination that it was includible in the net worth schedule.

No prolonged discussion is necessary with respect to petitioners' argument that respondent's failure to show a source of the disputed income precludes a finding that it is taxable. Increases in net worth determined on the basis of a net worth computation are evidence of income derived by the taxpayer during the net worth period. *Morris Lipsitz, supra.* The resulting deficiencies are presumptively correct, the burden of disproving them falling upon the taxpayer. In many instances it may be impossible for the Commissioner to ascertain the source of unreported income so determined, but the showing of such source is not always a necessary prerequisite to sustaining a deficiency determined under section 41 of the Code. *United States v. Massei,* 355 U. S. 595 (1958); *Goe v. Commissioner,* 198 F. 2d 851 (C. A. 3, 1952), certiorari denied 344 U. S. 897 (1952), affirming a Memorandum Opinion of this Court dated April 4, 1951; *Joseph Calafato,* 42 B. T. A. 881 (1940), affd. 124 F. 2d 187 (C. A. 3, 1941).

In the instant case the respondent has successfully negatived as possible sources of the unreported increases in net worth all those nontaxable sources indicated by the petitioners. We have sustained him in this matter, holding that the record establishes that petitioner did not receive gifts or inheritances which could account for the unreported increases. We are therefore of the opinion that respondent has carried the burden required of him by the law as stated in *Massei, supra.* In any event, as stated in *Holland, supra,* "the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant." More-

over, when confronted with the fact that his bank deposits for the years 1946 through 1948 exceeded his gross income as returned for those years, petitioner's initial response was that his fee-splitting arrangement with Miller, wherein he recorded on his books only the net fees which he retained after paying Miller probably would account for the discrepancy. At the least, this indicates to us that petitioner considered his practice of law as a possible source of unreported income during those years. Furthermore, petitioner destroyed his records for the years 1944 through 1948 and had inadequate records for 1949 and 1950. He is in no position to profit by his own dereliction as to records.

Consequently, we have found as a fact that petitioners understated their income for the years and in the amounts as determined by respondent through the use of the net worth computation, and accordingly sustain respondent's determination of deficiencies based on such understatements.

The additions to tax under section 293 (b) for fraud must also be sustained, since the evidence is clear and convincing that a part of the deficiencies for each of the years 1944 through 1950 was due to fraud with the intent to evade tax. Understanding fully that respondent must carry the burden of proof with respect to fraud, and even assuming that petitioners correctly challenged the items of cash on hand and jewelry and furs as they appear in the net worth computation, we are still faced with a conceded understatement of $19,452.74 for the 7-year period as a result of the stipulated increases in net worth. Of itself, this is strong evidence of fraud. *M. Rea Gano*, 19 B. T. A. 518 (1930); *Abraham Galant*, 26 T. C. 354 (1956). As indicated above, petitioners have failed in their challenge of the two items referred to and we have held on the record that petitioners' net worth increases were properly computed by respondent. Therefore, we are confronted with a total understatement of $102,277.74, or annual understatements approximating the following percentages of reported income:

| Year | Per cent | Year | Per cent |
|------|---------|------|---------|
| 1944 | 150 | 1948 | 166 |
| 1945 | 168 | 1949 | 216 |
| 1946 | 64 | 1950 | 29 |
| 1947 | 158 | | |

It is well settled that such large unexplained discrepancies between actual net income and reported income over a number of years are evidence of fraud. *Rogers* v. *Commissioner*, 111 F. 2d. 987 (C. A. 6, 1940), affirming 38 B. T. A. 16 (1938); *Louis Halle, supra*. Especially is that true in a case such as this, where the petitioner occupied a responsible position in his community, was versed in the law, and knew what was expected of him by his Government. In the light of

the record as a whole, we are convinced, and have found as a fact, based on clear and convincing evidence, that a part of the deficiencies for each of the years 1944 through 1950 was due to fraud with intent to evade tax.

Since we have found that the returns for the years 1944 through 1947 were false or fraudulent with the intent to evade tax, the statute of limitations is not a bar to the assessment and collection of the deficiencies determined for those years.

Finally, we turn to the additions to tax under section 294 (d) (2)[2] with respect to each of the years 1945 through 1951 for substantial underestimation of estimated tax. When we consider the payments made by petitioners on their estimated tax liabilities in each of those years, increased by the amount of tax withheld at the source, in relation to their actual tax liabilities, it is abundantly clear that the additions to the tax under 294 (d) (2) were properly determined for the years 1945 through 1950.

As to the year 1951, the parties have stipulated that there is no deficiency. Respondent argues that as of January 15, 1952, the last day for filing their 1951 estimate, the petitioners had made estimated tax payments of $1,900 which, when increased by the $937.20 withheld during that year, was less than 80 per cent of their total tax liability of $3,837.20, as finally returned for 1951. Respondents' calculations are correct, and therefore the addition to tax under section 294 (d) (2) for the year 1951 is sustained.

*Decisions will be entered under Rule 50.*

---

[2] SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT.

(d) ESTIMATED TAX.—

\*        \*        \*        \*        \*        \*        \*

(2) SUBSTANTIAL UNDERESTIMATE OF ESTIMATED TAX.—If 80 per centum of the tax (determined without regard to the credits under sections 32 and 35), in the case of individuals other than farmers exercising an election under section 60 (a), \* \* \* exceeds the estimated tax (increased by such credits), there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser. \* \* \*