LAWRENCE SUNBROCK (A.K.A. LARRY SUNBROCK), ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 54080, 54081, 54159, 55241. Filed April 25, 1967.

Lawrence Sunbrock, pro se.
*Louis DeReiul* and *George Hudspeth*, for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in income tax and additions to tax under sections 293(b), 291(a), and 294(d)(1)(A) of the Internal Revenue Code of 1939, for the years 1947, 1949, 1950, and 1951, as follows:

| Petitioner | Docket No. | Year | Deficiency | Additions to tax, I.R.C. 1939 | | |
|---|---|---|---|---|---|---|
| | | | | Sec. 293(b) | Sec. 291(a) | Sec. 294 (d)(1)(A) |
| Lawrence Sunbrock | 54080 | 1947 | $ 4,832.03 | $2,416.02 | $241.60 | $483.20 |
| Lawrence Henri Sunbrock | 54081 | 1949 | 4,386.24 | 2,193.12 | | 446.76 |
| Lawrence Henry Sunbrock | 55241 | 1950 | 10,471.30 | 5,235.65 | 2,617.83 | 1,060.22 |
| | | 1951 | 13,236.72 | 6,618.36 | | 1,315.56 |
| Georgia T. Hornsby | 54159 | 1949 | 4,386.24 | 2,193.12 | | 446.76 |

Respondent also determined additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939 for substantial underestimate of estimated tax for each of the years in question. At the hearing and on brief, respondent has conceded that petitioners are not liable for the additions to tax imposed by section 294(d)(2) in view of the Supreme Court's opinion in the case of *Commissioner* v. *Acker*, 361 U.S. 87.

Petitioners Lawrence H. Sunbrock and Georgia T. Hornsby (formerly Georgia Truitt Sunbrock) were husband and wife during the year 1949 and filed a joint return for that year. In view of their subsequent divorce and the remarriage of Georgia, a separate notice of deficiency was sent to each of said petitioners and they have filed separate petitions with this Court.[2] Georgia T. Hornsby is a party to the

---

[1] Proceedings of the following petitioners are consolidated herewith: Lawrence Henri Sunbrock, docket No. 54081; Georgia T. Hornsby, formerly Georgia Truitt Sunbrock, docket No. 54159; and Lawrence Henry Sunbrock (a.k.a. Larry Sunbrock), docket No. 55241.

[2] The statutory notices of deficiency in docket Nos. 54080 and 54081 are each dated May 19, 1954, and the petitions therein were each filed on Aug. 6, 1954. The statutory notice of deficiency in docket No. 54159 is dated May 19, 1954, and the petition therein was filed on Aug. 10, 1954. The statutory notice of deficiency in docket No. 55241 is dated Aug. 11, 1954, and the petition therein was filed on Nov. 8, 1954.

proceedings relating to the year 1949 only by reason of having filed the joint return. Accordingly, Lawrence Sunbrock will hereinafter be referred to as petitioner.

Respondent determined the deficiencies involved by the increase in net worth method. In the absence of fraud, or understatement of gross income under section 275(c) of the Internal Revenue Code of 1939, the years 1947 and 1949 are barred by the statute of limitations.

The issues presented relate to the correctness of respondent's determinations of the deficiencies in income tax, whether any part of the deficiencies for each of the years involved was due to fraud with intent to evade tax, whether the assessment and collection of the deficiencies for the years 1947 and 1949 are barred by the statute of limitations, and whether the additions to tax pursuant to sections 291(a) and 294(d)(1)(A) of the Internal Revenue Code of 1939 were properly asserted.

The several proceedings were consolidated for trial. Some of the facts have been agreed upon or otherwise established at a pretrial hearing under Rules 28(c) and 31(b)(5) of the Tax Court Rules of Practice. Certain minor concessions have been made by respondent which will require a recomputation of the deficiencies and additions to tax under Rule 50.

### FINDINGS OF FACT

The stipulated facts are incorporated herein by this reference.

Petitioner resides at Orlando, Fla. His returns for the years 1949, 1950, and 1951 were filed with the collector of internal revenue for the district of Florida. His 1947 return was filed with the collector of internal revenue for the district of Ohio.

For a number of years, including the taxable years here involved, petitioner has been engaged in producing rodeos, circuses, and other shows of that type for public entertainment in various places throughout the United States and, for a short while in 1948, in Europe.

Petitioner married Georgia Truitt in April 1949 and she worked with petitioner in the conduct of his business and handling the concessions at his various shows until they were divorced in May 1952.

Petitioner sometimes conducted his business under firm names which he adopted for his various enterprises and bank accounts. He maintained several bank accounts at Orlando, one at the National Bank of Orlando in the name of Rodeo, Inc., and three at the Citizens National Bank of Orlando in the names of Cracker Concession Co., Racing, Inc., and Sunbrock Rodeo.

Petitioner had a proprietary interest in Racing, Inc., sometimes called Florida Racing, Inc., a Florida corporation organized November

24, 1950, to engage in promoting stock car racing. Petitioner advanced funds to the company in 1950 and 1951 to meet its operating costs.

The income tax returns filed by petitioner for the years 1947, 1949, 1950, and 1951 show gross income, net income, and tax due as follows:

| Year | Gross income | Net income | Tax due |
|---|---|---|---|
| 1947 | $15,000 | ($700.00) | |
| 1949 | 15,668 | 2,290.31 | $81.38 |
| 1950 | [1] 6,550 | 2,685.36 | 212.00 |
| 1951 | 4,500 | 2,500.00 | |

[1] Reported as "Commissions earned with Texas Rodeo $6,550 less expenses $3,864.64."

An investigation of petitioner's income tax returns for 1951 and prior years was begun by a special agent of the Commissioner in the early part of 1952. A revenue agent of the Commissioner was also assigned to the case in September 1952. Respondent's agents interviewed each of the petitioners at various times in 1952, 1953, and 1954 and, though requested, were not furnished any permanent books of account or records covering petitioner Lawrence H. Sunbrock's rodeo and other similar operations. They did obtain from Georgia T. Hornsby (petitioner's former wife) a so-called black journal and a ledger showing certain receipts and expenses of "Florida Racing, Inc.," and a number of canceled checks and bank statements of various checking accounts. Petitioner told the agents he had kept no permanent books of account, though aware that he should do so, and that certain temporary files showing receipts and expenses of rodeo events conducted in 1949, 1950, and 1951, previously maintained in manila envelopes, had been destroyed by fire in 1952.

Being unable to obtain from petitioner any books or records from which they could verify petitioner's returns or determine his taxable income, the agents undertook to reconstruct his income by use of the net worth method. In this connection they searched the public records of Orange County, Fla., for real estate transactions in the names of Lawrence H. Sunbrock, his wives' names, and in various trade names used by him, as well as the corporate name of Racing, Inc. They contacted various banks located in the Orlando area and numerous third parties, including merchants and other persons involved in the financial affairs of petitioner and Racing, Inc. They also sought to determine any nontaxable items or sources of income. Petitioner advised them of none and they found none. The agents found that at various times during the years under investigation petitioner owned interests in several parcels of real estate, including a large tract of undeveloped land located in Orange County, Fla., a concrete and wood grandstand located at one of the racetracks, a ranchhouse, and a residence located

at Winter Haven, Fla. He was also found to have owned automobiles, trucks, a tractor, sound equipment, and other personal property.

Petitioner's assets and liabilities at the end of each of the years 1946 to 1951, inclusive, as found by the agents and as determined by respondent, were as follows:

| | 1946 | 1947 | 1948 | 1949 | 1950 | 1951 |
|---|---|---|---|---|---|---|
| *Assets* | | | | | | |
| Cash on hand | $1,200.00 | | 0 | $1,629.50 | 0 | $600.00 |
| Bank accounts: | | | | | | |
| Florida Bank at Orlando— Rodeo, Inc., checking account | 1,279.17 | $55.47 | 0 | 0 | 0 | 0 |
| Citizens National Bank of Orlando: | | | | | | |
| Georgia Truitt Sunbrock checking account | | | | 162.15 | 0 | 0 |
| Cracker Concession Co. checking account | | | | (704.35) | $2.54 | 1.54 |
| Real estate: | | | | | | |
| Land | 22,625.00 | 22,625.00 | $22,625.00 | 21,375.00 | 21,375.00 | 21,375.00 |
| Real estate improvements: | | | | | | |
| Grandstand (wood and concrete) | | | | 7,100.00 | 7,100.00 | 7,100.00 |
| Less: Liens and contracts payable | | | | (2,234.50) | (328.52) | (200.00) |
| Ranchhouse | 764.84 | 15,000.00 | 15,618.55 | 15,618.55 | 15,618.55 | 15,618.55 |
| Less: Liens and contracts payable | | [1] (4,393.27) | (3,658.61) | 0 | 0 | 0 |
| Dwelling (moved and improved) | | | | | 433.00 | 433.00 |
| Other investments: | | | | | | |
| Funds advanced—Florida Racing, Inc | | | | | 10,887.48 | 34,403.45 |
| Other assets: | | | | | | |
| Trucks and automobile | | | | 500.00 | 3,349.54 | 3,349.54 |
| Sound equipment | | | | 206.00 | 206.00 | 206.00 |
| Dodge roadster auto (GFTS) | | | | 1,950.00 | 0 | 0 |
| Cadillac (LHS) | | | | 2,500.00 | 2,500.00 | 2,500.00 |
| Tractor | | | | | | 1,100.00 |
| Total assets | 25,869.01 | 33,287.20 | 34,584.94 | 48,102.35 | 61,143.59 | 86,487.08 |
| *Liabilities* | | | | | | |
| Mortgages: | | | | | | |
| A. L. Lewis—first mortgage | $11,250.00 | $7,500.00 | $5,500.00 | $2,500.00 | 0 | 0 |
| A. L. Lewis—second mortgage | | | | 3,250.00 | $5.00 | 0 |
| Notes payable: | | | | | | |
| Universal CIT credit corp. (GFTS Dodge roadster) | | | | 1,357.40 | 0 | 0 |
| Associates Discount Corp. (LHS Cadillac, auto and truck) | | | | 600.00 | 992.70 | 0 |
| Citizen's National Bank of Orlando | | | | | 1,000.00 | $600.00 |
| Other loans: | | | | | | |
| Frank M. Truitt, Orlando, Fla | | | | | | 564.03 |
| Allowance for depreciation | | | | 523.19 | 2,472.29 | 4,365.81 |
| Total liabilities | 11,250.00 | 7,500.00 | 5,500.00 | 8,230.59 | 4,469.99 | 5,529.84 |

[1] After giving effect to an increased liability in the amount of $90, conceded by respondent at the hearing under Rule 31(*b*)(5).

Each of the items appearing in the foregoing schedules was carefully and meticulously documented by respondent's agents and was either conceded and found as a fact at the pretrial hearing on November 2 and 3, 1964, or is supported by documentary evidence filed herein. All such items are found as facts herein.

Petitioner's net worth increase, net taxable income, net taxable income reported, and understatement of income in the years 1947 to 1951, inclusive, as found by the agents, and as determined by the respondent, were as follows:

| | 1947 | 1948 | 1949 | 1950 | 1951 |
|---|---|---|---|---|---|
| Net worth increase | $11,168.19 | $3,297.74 | $10,786.82 | $16,801.84 | $24,283.64 |
| Add: Other expenditures: | | | | | |
| Gifts to wife—G.FTS | | | | 3,829.76 | 0 |
| Personal expenditures | 4,500.00 | 5,000.00 | 6,000.00 | 6,109.64 | 6,939.72 |
| Furniture and household furnishings | | | 5,056.58 | 1,395.16 | 0 |
| Attorney fees | 1,600.00 | 100.00 | 150.00 | 0 | 0 |
| Court fine | | 5,000.00 | 0 | 0 | 0 |
| Interest payments—A. L. Lewis | 187.50 | 0 | 0 | 0 | 0 |
| Automobile payments (1936 Dodge) | | | 251.50 | 0 | 0 |
| Insurance premiums: Life, residence and auto | | | ¹ 135.00 | ² 945.74 | 0 |
| Income tax payments | | | | 81.38 | |
| Less: Deductions (standard or itemized) | 1,287.50 | 500.00 | 1,107.31 | 500.00 | 500.00 |
| Net taxable income | 16,168.19 | 12,897.74 | 21,272.59 | 28,663.52 | 30,723.36 |
| Net taxable income reported | (700.00) | 0 | 2,290.31 | 2,685.36 | 2,500.00 |
| Understatement of income | 16,868.19 | 12,897.74 | 18,982.28 | 25,978.16 | 28,223.36 |

¹ After giving effect to a $63.60 adjustment in the amount of life insurance premiums paid in 1949, as conceded by respondent at the hearing under Rule 31(b)(5).
² After giving effect to a $34 adjustment in the amount of automobile insurance premiums paid in 1950, as conceded by respondent at the hearing under Rule 31(b)(5).

The items "Other expenditures" appearing in the foregoing schedule were either conceded and found as facts at the pretrial hearing on November 2 and 3, 1964, or are established by the testimony of respondent's agents, and are found as facts herein.

Petitioner's receipts from his rodeo show in the Yankee Stadium, New York, alone during the period May 30 to June 7, 1947, amounted to $109,025.93.

In searching bank records in the vicinity of Orlando the examining revenue agents found records of deposits in the several accounts in which petitioner placed receipts from his shows amounting to $29,893.75 in 1946, $70,168.17 in 1947, $1,850 in 1948, $21,798.54 in 1949, and $40,824.48 in 1950.

The bank records of Florida Racing, Inc., which were kept under petitioner's direction showed advances to the corporation by petitioner amounting to $10,887.48 in 1950 and $23,515.97 in 1951. These amounts are reflected in respondent's schedule of net worth increase appearing above.

Petitioner grossly understated his income in his returns for each of the years 1947, 1949, 1950, and 1951. A part of the income tax deficiencies determined by respondent for each of those years was due to fraud with intent to evade tax.

Petitioner Lawrence Sunbrock's Federal income tax return for 1947 was filed March 22, 1948, and his return for 1950 was filed August 15, 1951. He has failed to establish that his failure to file either

of these returns timely was due to reasonable cause, as provided by section 291(a) of the Internal Revenue Code of 1939.

Petitioners have failed to establish that their failure to file declarations of estimated tax for the years 1947, 1949, 1950, and 1951 was due to reasonable cause as provided by section 294(d)(1)(A) of the Internal Revenue Code of 1939.

OPINION

Petitioner's principal contention with respect to the deficiencies and additions to tax involved in these proceedings, and in fact the only contention with respect to which he has offered any evidence, is that his entire tax liability for the years involved was settled by his payment of $275,000 into the U.S. District Court for the Southern District of Florida, pursuant to a judgment entered against him by that court on August 17, 1961.[3] The judgment in question was entered against the defendant Lawrence H. Sunbrock (petitioner herein) in two civil actions, Nos. 629 and 962, which were tried together before the District Court without the intervention of a jury.

Civil Action No. 629 was an action filed on December 3, 1953, by the United States of America, as plaintiff, against Lawrence H. Sunbrock and others (including Racing, Inc., a Florida corporation, and Rodeo, Inc., an alleged Ohio corporation, all the stock and interests of which were owned by Lawrence H. Sunbrock), under the provisions of section 3678 of the Internal Revenue Code of 1939, to foreclose liens for Federal income taxes for the years 1940 to 1943, inclusive, 1946, the period November 1 (24), 1950, to October 31, 1951, and the years 1954 and 1958, and for Federal admissions taxes for various periods during the years 1938 to 1942, inclusive, 1945, 1947, 1948, and 1950, all of which taxes had previously been determined and *assessed* and were outstanding against the defendant Lawrence H. Sunbrock, except the income taxes for the years 1954 and 1958, which were assessed in 1956 and 1959. (Petitioner's Exhibit 3, pars. 1(a) and VII.) Civil Action No. 962 was an action filed on May 19, 1959, against Lawrence H. Sunbrock and others (including Racing, Inc.), also under the provisions of section 3678 of the Internal Revenue Code of 1939, to foreclose liens for withholding taxes for 1950 and 1951, and income taxes for 1952 and 1953, all of which had previously been determined and *assessed* and were outstanding against the defendant Lawrence H. Sunbrock. (Petitioner's Exhibit 3, pars. 1(b) and VII.)

The income taxes covering the period November 1 (24), 1950, to October 31, 1951, involved in Civil Action No. 629, represented *corporate* income taxes which had been assessed against Racing, Inc., also

---

[3] Petitioner's Exhibit 3 and respondent's Exhibit UU.

known as Florida Racing, Inc., all the stock and interests of which were owned by the defendant Lawrence H. Sunbrock (petitioner herein).[4]

Petitioner has repeatedly urged this Court to quash (or dismiss) the proceedings herein on the ground that his tax liability for the years involved was determined by the District Court in the two civil actions mentioned above and was satisfied by his payment of $275,000 pursuant to the judgment rendered therein. It is apparently his position that this Court lacks jurisdiction to redetermine his liability for the taxes involved herein. Petitioner has referred us to no statute or judicial authority in support of his contention. Each of his motions to quash (or dismiss) the present proceedings has uniformly been denied by the respective Judges of this Court before whom they were made, and specifically so by the written order of the present Judge entered October 28, 1965.

The two civil actions in the District Court were instituted by the United States under the provisions of section 3678 of the Internal Revenue Code of 1939 to foreclose liens which had been filed against property owned by the defendant Lawrence H. Sunbrock (petitioner herein) and thus enforce the collection of taxes (income, admissions, and withholding taxes) which had previously been determined and assessed against him or his wholly owned corporation. These were distinct causes of action from the ones involved in the present proceedings which were instituted by petitioner (or his former wife) under the provisions of section 272 of the Internal Revenue Code of 1939, seeking a review by the Tax Court of deficiencies in the *individual* income taxes of the petitioner which had been determined, but not yet assessed, against the petitioner for the taxable years 1947, 1949, 1950, and 1951. The District Court was not called upon to make, and did not make, any determination of petitioner's individual income tax liability for any of the taxable years involved herein, nor could it appropriately have done so in those actions. The collection actions brought by the United States under section 3678 were no bar to the Commissioner's determination of the deficiencies and additions to tax involved herein and the judgment rendered by the District Court does not deprive this Court of jurisdiction in the present proceedings. See *Commissioner* v. *Sunnen*, 333 U.S. 591. Accordingly, we adhere to our former rulings denying petitioner's motion to quash or dismiss these proceedings.

Having determined that the collection actions brought by the United States under section 3678 were no bar to the Commissioner's determination of the deficiencies and additions to tax involved herein and that the judgment rendered by the District Court in those actions does

---

[4] See Complaint in Civil Action No. 629, filed as an exhibit by petitioner at the hearing before Judge Withey on Nov. 2, 1964, and petitioner's Exhibit 3. Respondent's agent also referred to it as such in his testimony.

not deprive this Court of jurisdiction in the present proceedings, we turn to a consideration of the issues presented herein on the merits.

Petitioner appeared pro se at each of the trial and pretrial hearings held in these proceedings,[5] notwithstanding he was advised by the Court that it would be to his best interests to employ counsel.[6] He produced no witnesses and did not himself take the witness stand. No brief has been filed by or on behalf of the petitioner.

Respondent determined the deficiencies in the income taxes of the petitioners for the years 1947, 1949, 1950, and 1951 by the net worth method. The net worth method is not a system of accounting; nor is it a substitute for the cash or accrual basis of accounting or for any other recognized method of keeping books. It is a method, however, which has been recognized and approved by the various courts of the United States, in both criminal and civil cases, whereby the taxable net income of a taxpayer may be determined, in the absence of adequate accounting books and records or where such books and records as may have been maintained by the taxpayer are incomplete, inaccurate, or false. *Holland* v. *United States*, 348 U.S. 121; *Cefalu* v. *Commissioner*, 276 F.2d 122 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court; *Morris Lipsitz*, 21 T.C. 917, affd. 220 F.2d 871, certiorari denied 350 U.S. 845. In *Cefalu* v. *Commissioner, supra*, the U.S. Court of

---

[5] Chronological history of trial proceedings:

Set for trial at Jacksonville, Fla., on Nov. 18, 1963, at which time Judge Raum ruled this Court had jurisdiction to determine the deficiencies for the years involved herein, and continued the case for preparation of stipulations of fact as required by Rule 31(b)(1) of the Tax Court or appropriate action under Rule 31(b)(5).

Set for hearing at Jacksonville, Fla., on Mar. 2, 1964, pursuant to motion filed by respondent on Jan. 27, 1964, under Rule 31(b)(5). Hearing continued by Judge Arundell due to illness of petitioner.

Pretrial hearing under Rules 28(c) and 31(b)(5) held at Miami, Fla., by Judge Withey on Nov. 2 and 3, 1964.

Called for trial on the merits at Jacksonville, Fla., on Feb. 8, 1965, before Judge Fisher. After 5 hours of hearings on February 8 and 9, 1965, the trial was suspended to enable petitioner to obtain counsel and to procure the testimony of certain witnesses. Judge Fisher died while on calendar at Jacksonville, Fla., on Feb. 11, 1965, and the Chief Judge subsequently entered an order continuing the same.

Noticed for trial on the merits at Jacksonville, Fla., on Nov. 29, 1965; notice served on both parties Aug. 23, 1965.

Petitioner's "Motion to Quash and/or Trial de Novo" filed Oct. 7, 1965, was considered at a motions calendar held in Washington, D.C., on Oct. 27, 1965. There was no appearance by or on behalf of either petitioner. Judge Bruce, to whom the case had been assigned for trial, denied the motion to quash and granted the motion for trial de novo insofar as it related to all proceedings had before Judge Fisher on Feb. 8 and 9, 1965.

Trial on the merits was held at Jacksonville, Fla., on Nov. 29 and 30 and Dec. 1, 1965. Petitioner appeared pro se on Nov. 29 and during the morning session on Nov. 30. He absented himself without cause from the remainder of the trial. Upon the conclusion of respondent's evidence on Dec. 1, 1965, the case was submitted with leave to the parties to file opening briefs within 60 days and reply briefs 30 days thereafter. Petitioner has filed no brief, either opening brief or reply brief, although furnished a copy of respondent's brief, by direction of the Court, on Mar. 21, 1966.

[6] He was originally represented, and the petitions in docket Nos. 54080, 54081, and 55241 were filed by two competent tax attorneys, both of whom withdrew in February 1963 because of petitioner's failure to cooperate with them in the preparation of the cases for trial.

Appeals for the Fifth Circuit described the net worth method as a "mathematical formula: increase in net worth, plus non-deductible disbursements, minus nontaxable receipts, equals taxable net income." Where, as shown in our Findings of Fact, the petitioner has failed to keep adequate records of his business transactions, respondent's use of the net worth method to determine petitioner's taxable net income for the years in question was fully justified.

The deficiencies determined by the respondent are prima facie correct unless clearly shown to be erroneous. The burden of proof is upon the petitioner to overcome the presumptive correctness of such deficiencies. *Kenney* v. *Commissioner*, 111 F.2d 374 (C.A. 5), affirming a Memorandum Opinion of this Court; *Cefalu* v. *Commissioner, supra.* See also *Welch* v. *Helvering*, 290 U.S. 111; *Frank Imburgia*, 22 T.C. 1002; and Rule 32 of the Tax Court Rules of Practice.

Neither of the petitioners has offered any evidence either to disprove the correctness of the deficiencies determined by respondent or to refute respondent's evidence of fraud. Other than the exhibits relating to the collection suits heretofore mentioned, the petitioner Lawrence Sunbrock has offered no evidence of any character. The facts stipulated by the petitioner Georgia T. Hornsby, in docket No. 54159, have been given consideration in respondent's computation of the deficiencies. Under the circumstances, the deficiencies in the income taxes of the petitioners for each of the years in question, as adjusted in accordance with the concessions made by respondent, must be sustained.[7]

However, we need not rely entirely on petitioners' failure to sustain their burden of proof or on the presumption of correctness which attaches to respondent's determination. Each of the items appearing in the schedules set forth in our findings was carefully and meticulously documented and explained by respondent's agents and, with the exception of four of the items, was conceded and found as a fact at the pretrial hearing in November 1964. The four items left for proof were: (1) Other investments: Funds advanced—Florida Racing, Inc.; (2) allowance for depreciation; (3) gifts to wife—GFTS; and (4) personal expenditures.

At the trial herein, respondent, in support of these items, offered the testimony of Special Agent Alson E. Lancaster, who had participated in the investigation of petitioner's business transactions during the years involved, the stipulation filed in docket No. 54159, and the testimony of the petitioner Georgia T. Hornsby, former wife of the petitioner Lawrence Sunbrock. The items in question were supported by summary schedules prepared by Special Agent Lancaster and received

---

[7] The issues relating to limitations and additions to tax for fraud are hereinafter discussed.

as evidence herein. These schedules were based on entries contained in the journal of Racing, Inc., identified and explained to the agent by Georgia T. Hornsby; the cost of various assets established at the pretrial hearing in November 1964, and the rates and useful lives of these assets as used in petitioner's income tax returns and consistent with the guidelines established by respondent's depreciation regulations; an analysis of bank ledger sheets showing advances to the Georgia Concession Co. operated by Georgia T. Hornsby (then Georgia T. Sunbrock) and payments on the Dodge roadster acquired by Georgia. The item "Personal expenditures" was based in part on estimates and on withdrawals made from the various checking accounts and items reflected in the journal of Racing, Inc.

The evidence relating to these items, as well as the items conceded and found as facts at the pretrial hearing, is more particularly detailed in respondent's requested findings of fact set forth in his brief. Since petitioner, although allowed ample opportunity to do so, has not seen fit to file either an opening brief or a reply to respondent's brief, it may be assumed that he is not now contesting the correctness of any of the items set forth in respondent's computations. We have nevertheless carefully examined the evidence submitted by respondent as to each item contained in the schedules set forth in our findings and have found them as facts. Accordingly, we find the deficiencies, as adjusted, to have been correctly determined by respondent.

We turn next to the question whether the assessment and collection of the deficiencies for the years 1947 and 1949 are barred by limitations and also to the question whether petitioners are liable for additions to tax for fraud for each of the years involved—1947, 1949, 1950, and 1951.

Section 276(a) of the Internal Revenue Code of 1939 (sec. 6501(c), 1954 Code) provides that "In the case of a false or fraudulent return with intent to evade tax," the tax may be assessed at any time. Section 293(b) of the 1939 Code (section 6653(b), 1954 Code) provides for additions to tax "If any part of any deficiency is due to fraud with intent to evade tax." Thus, fraud is the key factor in both these issues.

Respondent has the burden of proving fraud, by clear and convincing evidence, both for the purposes of section 276(a) and section 293(b). Section 7454(a) of the Internal Revenue Code of 1954 (sec. 1112, 1939 Code); Rule 32 of the Tax Court Rules of Practice; *Cefalu* v. *Commissioner, supra; Arlette Coat Co.,* 14 T.C. 751. We think respondent has amply sustained his burden as to each of the years involved in these proceedings.

The question of fraud is one of fact to be determined from all the facts and circumstances of the particular case. The failure to report or the mere understatement of income is not, standing alone, sufficient

to prove fraud. *Cefalu* v. *Commissioner, supra; Merritt* v. *Commissioner,* 301 F. 2d 484 (C.A. 5, 1962), affirming a Memorandum Opinion of this Court; *Toledano* v. *Commissioner,* 362 F. 2d 243 (C.A. 5, 1966), reversing in part for other reasons a Memorandum Opinion of this Court. It is not necessary, however, that the respondent prove the precise amount of the deficiencies in order to establish fraud. *W. A. Shaw,* 27 T.C. 561, 570. As the court pointed out in the *Toledano* case, "the Commissioner need only prove that some portion of the deficiency is due to fraud." And, in *Merritt* v. *Commissioner, supra,* the court stated:

Consistent and substantial understatement of income is by itself strong evidence of fraud. This proof, coupled with the showing that the records were both incomplete and inaccurate, and that the petitioner did not supply the bookkeeper with all of the data necessary for maintaining complete and accurate records, is enough to warrant the Tax Court in finding fraud. Reaves v. Commissioner, 5th Cir. 1961, 295 F. 2d 336; Cefalu v. Commissioner, supra; Bryan v. Commissioner, supra [209 F. 2d 822 (C.A. 5, 1954), certiorari denied 348 U.S. 912].

See also *Holland* v. *United States, supra; Shahadi* v. *Commissioner,* 266 F. 2d 495, affirming 29 T.C. 1157, certiorari denied 361 U.S. 874; *Schwarzkopf* v. *Commissioner,* 246 F. 2d 731 (C.A. 3), affirming on this point a Memorandum Opinion of this Court.

As our findings clearly demonstrate, the petitioner has consistently and substantially understated his income over a period of years. Because of his failure to keep adequate books and records it has not been possible to determine the *gross* amount of income received by him. Based upon the net worth method, however, it is clearly established that his *net* taxable income, for each of the taxable years involved, was understated by him in amounts ranging from $16,868.19 in 1947 to $28,223.36 in 1951.

In 1947 his receipts from a rodeo show alone, held by him in Yankee Stadium in New York from May 30 to June 7, 1947, amounted to over $109,000, whereas on his tax return for that year he reported gross income of only $15,000 and claimed deductions of $15,700. On his return petitioner claimed he was a salaried employee of Rodeo, Inc., which filed its own returns. Respondent's records indicate no return was ever filed by "Rodeo, Inc." in any of the 64 Internal Revenue Service collection districts, and the records of Ohio and Florida fail to reveal that any corporation was ever chartered in either of said States under the name "Rodeo, Inc." Petitioner has offered no evidence to the contrary.

Petitioner failed to reveal to the revenue agents the existence of the three checking accounts in the Citizens National Bank of Orlando in which receipts from his shows were placed amounting to $29,893.75 in 1946, $70,168.17 in 1947, $1,850 in 1948, $21,798.54 in 1949, and

$40,824.48 in 1950. He told respondent's agent he had invested only "a very small amount" in Racing, Inc., whereas bank records indicated advances to "Florida Racing, Inc." (a name sometimes used by him for the corporation "Racing, Inc."), amounting to $10,887.48 in 1950 and $23,515.97 in 1951.

There is also evidence petitioner made false and fraudulent entries in the journal of Florida Racing, Inc. Respondent's agent testified certain entries were not in the journal when it was first examined by him and petitioner had admitted they were made by him shortly prior to the trial of the collection cases in the District Court, Civil Action Nos. 629 and 962, for the purpose of trying to establish certain facts in that proceeding.

The record herein reveals a consistent lack of cooperation on the part of the petitioner and repeated attempts through concealment and misrepresentation to avoid the payment of taxes owed by him, not only of income taxes but of withholding and admissions taxes. His disposition to perpetrate fraud is further revealed by his attempt to obtain a continuance during the course of the trial herein by means of a telegram sent to the Court during the noon recess on the second day of the trial, falsely and fraudulently suggesting that he had become ill and his doctor had advised him not to continue in the trial, whereas an immediate investigation made under the direction of the Court revealed no evidence petitioner was ill at the hotel where he had been staying or at any hospital. On the contrary, he had left the hotel, where he had registered under an assumed name, without paying his hotel bill and had taken a bus from Jacksonville to Orlando, Fla., where he was observed to alight in apparent good health and spirits and able to carry his own baggage.

Considering all of the facts and circumstances herein we find and hold that at least a part of the deficiency for each of the years 1947, 1949, 1950, and 1951 was due to fraud with intent to evade tax; that petitioner's returns for the years 1947 and 1949 were false and fraudulent with intent to evade tax; and that the assessment and collection of the deficiencies and additions to tax for any of such years are not barred by limitations.

Petitioner Lawrence Sunbrock has offered no evidence to demonstrate that the late filing of his returns for the years 1947 and 1950 was due to reasonable cause and not willful neglect. Accordingly, we hold that the petitioner Lawrence Sunbrock is liable for the additions to tax imposed by section 291(a) of the Internal Revenue Code of 1939 for each of the years 1947 and 1950, as determined by respondent.

Petitioner has also failed to establish that he filed declarations of estimated tax for any of the years 1947, 1949, 1950, and 1951, nor has

he offered any evidence to demonstrate that the failure to file declarations of estimated tax for any of said years was due to reasonable cause and not willful neglect. Accordingly, we hold that petitioner Lawrence Sunbrock is liable for the additions to tax imposed by section 294(d)(1)(A) for each of the years 1947, 1949, 1950, and 1951, as determined by respondent. *Rene R. Bouche,* 18 T.C. 144.

By reason of having filed a joint return for 1949 with her then husband, Lawrence Sunbrock, the petitioner Georgia T. Hornsby is jointly and severally liable with him for the deficiency and additions to tax, as adjusted, determined by respondent for that year. *Dora S. Hughes,* 26 T.C. 23; *Boyett* v. *Commissioner,* 204 F. 2d 205 (C.A. 5), affirming a Memorandum Opinion of this Court; *Louise M. Scudder,* 48 T.C. 36 (1967).

*Decisions will be entered under Rule 50.*