WARREN E. ROSE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rose v. Commissioner
Docket No. 4974-72.
United States Tax Court
T.C. Memo 1974-91; 1974 Tax Ct. Memo LEXIS 229; 33 T.C.M. (CCH) 458; T.C.M. (RIA) 74091; April 15, 1974, Filed. Arthur H. Thomas, Jr., for the petitioner. Jesse T. Mountjoy, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: The Commissioner determined a deficiency of $23,092.95 in the income tax of petitioner for 1968 and an addition of $11,546.48 to that tax under section 6653(b). [1]
Certain concessions have been made. The questions remaining for decision are: (1) Whether, in 1968, petitioner had unreported income of $5,000 in addition to $44,000 which petitioner has conceded he erroneously failed to report; and (2) Whether any part of petitioner's underpayment of tax for 1968 was due to fraud. FINDINGS OF FACT The stipulated facts are so found and are incorporated herein by this reference. *230 Petitioner, Warren E. Rose, resided in Columbus, Ohio, when he filed his petition in this proceeding. He timely filed his 1968 Federal income tax return, on which he reported only military wage income of $553.02, with the district director of internal revenue, Cincinnati, Ohio. Petitioner was born on March 15, 1947, and graduated from high school in Columbus, Ohio, in June 1965. Between June 1965 and July 1966, petitioner completed one quarter-period as a full time student at Ohio State University, where he received nine credit hours of failure grades and three credit hours of passing grades. During that period, petitioner worked in a shoe store and a post office. On or about June 21, 1966, petitioner opened a savings account, number XX6091 (later redesignated number XX-X091-0), at The City National Bank & Trust Company (hereafter City National) in Columbus. From June 21, 1966, to February 18, 1968, he made only three deposits, $20, $20, and $200 to the savings account. On or about July 1, 1968, petitioner's sister, Phyllis A. Rose, leased a safe deposit box, #1340, at City National and appointed petitioner as her deputy with rights of entry to the box. Petitioner made *231 twenty of the twenty-five entries to the box between July 1968 and July 1971. Petitioner served in the United States Army from July 23, 1966, to July 22, 1969. Between September 1967 and October 1968, he served in the Republic of Vietnam as an Army postal clerk attached to the First Administrative Company of the United States Army's First Infantry Division. In this capacity, he was stationed at Postal Unit 5, Di An, Republic of Vietnam, from January 1968 to October 19, 1968. As an Army postal clerk, petitioner's principal duties were posting and receiving mail, selling stamps, and selling United States Postal Money Orders to soldiers. Between September 16, 1968, and October 10, 1968, while stationed in Di An, petitioner purchased 440 United States Postal Money Orders for $100 each, payable to petitioner. Petitioner kept no books and records relating to his purchase and use of the 440 orders. Petitioner carried the 440 money orders on his person when returning to the United States in November 1968. On November 21, 1968, while on military leave from Fort Riley, Kansas, petitioner presented the 440 money orders to City National to be cashed and deposited in his savings account. *232 On the same day, petitioner made entry to his safe deposit box at City National. On February 19, 1969, having received approval from the United States Postal Inspector-in-Charge, San Francisco, California, City National processed the postal money orders and credited petitioner's savings account with $44,000. Petitioner was notified that postal authorities had approved the processing of the money orders. On August 12, 1969, petitioner made an entry to the safe deposit box at City National. On August 13, 1969, petitioner withdrew $46,100 in cash from his savings account at City National. Petitioner withdrew his money from his savings account because he was embarrassed by bank employees discussing the size of his account and because he was unable to cash a check at one of City National's branches. On August 25, 1969, petitioner opened a savings account, number X3508, at the First Federal Savings and Loan Association (hereafter First Federal) in Columbus and deposited $1,000 in that account. On August 25, 1969, petitioner opened a savings certificate share account, number XXXX, at five and one-half percent interest at First Federal, deposited $44,000 in currency in this *233 account, and received a certificate of deposit, number 1671. The dividends on savings certificate share account number XXXX were credited to petitioner's savings account at First Federal. On February 6, 1970, petitioner transferred the $44,000 in savings certificate share account number XXXX to another savings certificate share account, number 60060, at six percent interest at First Federal and was issued a certificate of deposit, number X0060, for $44,000. Dividends from that certificate were credited to petitioner's savings account at First Federal. On June 17, 1970, petitioner transferred the $44,000 in share account number X0060 and $1,000 in his savings account to another savings certificate share account, number X0436, at six percent interest at First Federal and was issued a certificate of deposit, number 60436, for $45,000. Dividends on share account number 60436 were credited to petitioner's savings account at First Federal. On March 25, 1971, petitioner transferred $1,000 from his First Federal savings account to a new savings certificate share account, number 30230, at First Federal and was issued a certificate of deposit, number 30230, for $1,000. Dividends *234 on this share account were credited to petitioner's savings account. Certificates of deposit numbers 60060, 60436, and 30230 provided for early redemption penalties in the form of forfeitures of specified earnings on the share accounts. Internal Revenue Agent Willard Bannister (hereafter Bannister) was assigned in the course of his duties to examine petitioner's 1968 Federal income tax return in May 1971. Prior to any contact he had with petitioner, Bannister had in his possession and knowledge only petitioner's 1968 return, a document from the McClellan Senate Subcommittee on Governmental Operations, referring to alleged 440 $100 U.S. Postal Money Orders issued to petitioner, and information concerning a bank account of petitioner at City National. Bannister had no information relating to petitioner's bank accounts at First Federal, the Ohio National Bank (hereafter Ohio National) or the Huntington National Bank (hereafter Huntington National). Likewise, Bannister had no information relating to the transactions involving the $44,000 in U.S. Postal Money Orders. In the course of his examination, Bannister interviewed petitioner in person on June 17, 1971, and by telephone *235 on June 30, 1971. At their meeting on June 17, 1971, Bannister told petitioner that he wanted to know whether petitioner had brought any large sums of money to the United States from Vietnam in 1968. Petitioner told Bannister that he brought back at least $5,000 but did not mention the $44,000. When Bannister asked petitioner if he had any bank accounts, petitioner disclosed his closed account at City National and his active account at Ohio National. Petitioner did not disclose his active accounts at First Federal and at Huntington National. In his telephone call on June 30, 1971, Bannister asked petitioner about his deposit of 440 postal money orders in his City National account in February 1969. Petitioner did not directly answer Bannister's question. Bannister again asked about bank accounts and petitioner again failed to advise Bannister of his accounts at First Federal and at Huntington National. Petitioner told Bannister that he did not intend to violate the law and that, if he owned any money, Bannister should send him a statement. He indicated that he would pay any taxes he owed. Bannister had no further contact with petitioner after June 30, 1971. After his *236 final contact with Bannister, petitioner was aware that the Commissioner was trying to locate the $44,000 he had deposited with City National. On July 2, 1971, petitioner redeemed certificates of deposit numbers 60436 and 30230 at First Federal and paid the bank a total of $694.48 in early redemption penalties, which were equivalent to a full quarter's interest on the certificates. First Federal issued to petitioner nine cashier checks, which totaled $45,000, and $1,000 in currency. On July 22, 1971, petitioner deposited the cashier checks in his savings account at First Federal. During August and September 1971, petitioner withdrew $10,000 in currency and cashier checks from his savings account and spent this money. On his 1969 and 1970 Federal income tax returns, petitioner reported dividends and interest of $770 and $1,280.89, respectively, but he received dividends and interest from First Federal totaling $1,019.62 in 1969 and $2,442.46 in 1970. ULTIMATE CONCLUSIONS (1) Petitioner has not met his burden of proving erroneous the Commissioner's determination that petitioner understated his 1968 gross income by $5,000. (2) The Commissioner has not met his burden of *237 proving that any part of petitioner's underpayment of his 1968 tax was due to fraud. OPINION The Commissioner determined that, in 1968, petitioner failed to report $5,000 in gambling income and $44,000 represented by 440 postal money orders. Petitioner concedes that he erroneously failed to report $44,000 as income, but he argues that he did not receive $5,000 in addition to the $44,000. In conversations with Bannister, petitioner stated that he brought as much as $5,000 into this country from Vietnam. At trial, petitioner testified that he returned to this country with no more than $44,600. Petitioner asks us to conclude from these facts that the Commissioner's determination was based on petitioner's statement to Bannister and that, in that statement, petitioner was referring to only a portion of the $44,000. In short, petitioner asks us to conclude that petitioner intended to reveal a portion of the $44,000 rather than a separate fund and that the Commissioner's determination was based on a misunderstanding of that intent. We are not willing to come to either conclusion, for we are not certain of either the substance of petitioner's conversations with Bannister or the *238 basis on which the Commissioner determined the $5,000 deficiency. Nor are we willing to hold that petitioner's testimony that he returned with no more than $44,600 is sufficient to sustain his burden of proving the Commissioner's determination erroneous. Rule 142, Tax Court Rules of Practice and Procedure.
Section 7454(a) places the burden of proving fraud upon the Commissioner, and that burden is to be carried by clear and convincing evidence. Blaine S. Fox, 61 T.C. No. 75 (1974), Lawrence Sunbrock, 48 T.C. 55, 64 (1967), and Rule 142(b), Tax Court Rules of Practice and Procedure. After a careful examination of the entire record in this case, we conclude that the Commissioner has not so carried that burden. The Commissioner argues that petitioner's failure to report $44,000 in 1968 may be used to establish fraud. The Commissioner introduced no evidence of "consistent failure to report substantial amounts of income over a number of years" ( John Harper, 54 T.C. 1121, 1139 (1970), and J. K. Vise, 31 T.C. 220 (1958), affd. 278 F.2d 642, (C.A. 6, 1960)), and we see no reason to consider as conclusively significant *239 one year's understatement of taxable income. See L. Glenn Switzer, 20 T.C. 759, 765 (1953) and James Nicholson, 32 B.T.A. 977, 989 (1935), affd. 90 F.2d 978 (C.A. 8, 1937). Of more significance, we are not convinced that petitioner intended to evade taxes which he believed he owed when he failed to report the $44,000 as income. He testified that a conversation with an enlisted soldier and his understanding of postal manuals led him to believe "very strongly" that the money was not taxable. We believe that testimony, especially in light of petitioner's limited educational accomplishment. See E. S. Iley, 19 T.C. 631, 635 (1952), where we said: Although intent is a state of mind, it is nonetheless a fact to be proven by the evidence. It must appear as a positive factor. In determining the presence or absence of fraud the trier of the facts must consider the native equipment and the training and experience of the party charged. The Commissioner contends that petitioner's handling of the money on his return to this country and his statements to Bannister indicate a conscious attempt to conceal the money from the Commissioner's *240 agents. We believe petitioner's testimony that he removed his money from City National because the bank's employees made embarrasing references to his wealth and because he had trouble cashing a money order at a branch. We find no basis for the Commissioner's assertion that the petitioner's withdrawal from his City National account reflected an attempt to conceal the $44,000. We cannot accept the Commissioner's assertion that, after petitioner's two contacts with Bannister, petitioner decided to spend his savings so that the Commissioner could not locate and identify the funds. Petitioner testified that he did not intend to spend all the money. He testified that he had planned to buy a house and to give some money to his church and, he testified, "I figured, well, this is as good a time to do it in, you know, before something goes wrong, and I'm not able to use the money." We are not willing to conclude that this testimony either alone or in conjunction with any other evidence in the record indicates an intent to "hinder and obstruct" as the Commissioner contends. The record is confused as to the substance of petitioner's conversations with Bannister. The fact that petitioner *241 did not tell Bannister about the $44,000 suggests evasiveness but does not convince us of fraud. Both petitioner and Bannister testified that petitioner had said he would pay any taxes he owed if he received the kind of official statement he had received in other years. Petitioner was aware of and never objected to City National's notifying Federal postal authorities of the $44,000 in money orders, and, because he drew no distinction between various agencies of the Federal government, he believed that the agents of the Commissioner would be aware of any information sent to the postal authorities.We also note that, on his 1969 and 1970 Federal income tax returns, petitioner reported some of the interest income derived from the $44,000. In summary, we hold that the Commissioner has not carried his burden of proving by clear and convincing evidence that petitioner's failure to report the $44,000 was due to fraud. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated. ↩