JOE EDWARD SAMMONS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sammons v. Commissioner
Docket Nos. 6287-80, 16439-80.
United States Tax Court
T.C. Memo 1984-414; 1984 Tax Ct. Memo LEXIS 259; 48 T.C.M. (CCH) 771; T.C.M. (RIA) 84414; August 6, 1984; As Amended August 7, 1984 JOHN Kennedy Lynch and Richard S. Lynch, for the petitioner. Frank R. DeSantis, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined the following deficiencies in, *260 and additions to, petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
1969
$10,661.40
$5,330.70
1970
8,013.79
4,006.90
1971
4,741.35
2,370.68
1972
5,549.17
2,274.59
1973
3,368.41
1,684.21
The issues for decision re: (1) whether a sworn statement and a set of index cards submitted as evidence by respondent are admissible under the hearsay exceptions to the Federal Rules of Evidence; (2) whether petitioner understated his adjusted gross income for the taxable years in issue; (3) whether respondent properly imposed additions to tax for fraud under section 6653(b); and (4) whether the statute of limitations bars the assessment and collection of any deficiency for the taxable year 1973. Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Sandusky, Ohio, *261 when he filed his petitions in these cases. Petitioner served in the U.S. Army from November 1944 until August 1946, and spent a portion of his service overseas. Petitioner married in 1950. At the time of his marriage, petitioner had $7,000.00 in his savings account, which he subsequently augmented by regular deposits from his earnings. Petitioner derived income from his ownership of the El Dorado Motel. He purchased the property on which this hotel was constructed in 1959 and, from 1959 through 1961, he had built a one-story cement block structure containing twelve one-room efficiency living units thereon. In 1962, petitioner purchased a liquor license for $10,000.00 and constructed an additional one-story building on the property. This building was used as a bar, and it also contained 14 living units. To finance the license and construction, petitioner secured a $27,000.00 mortgage against the property. In 1969, petitioner received $33,000.00 in insurance proceeds to retire the balance of the $27,000.00 loan. From 1964 through 1968, petitioner added two more buildings to the El Dorado, each containing 12 living units. He completed development by adding a 16-unit building, *262 bringing the total number of living units to 66. Petitioner added a laundromat to the El Dorado in 1965, financed by a $10,000.00 loan which was paid off in 1969. The laundromat contained 24 washers, 10 dryers, and a soap dispensing machine, all of which were coin operated. The machines were used on a constant basis. Petitioner's Federal income tax returns for the years 1965 through 1968 showed no tax liability. The El Dorado operated more as a rooming house than as a motel. Rooms were rented by the week or month, and not on a daily basis. Although some residents were transients, many stayed on a permanent basis. Petitioner employed individuals in the office of the El Dorado to assist in the collection of rent. When a tenant paid the rent, a receipt was provided from a receipt book. The rentals were regularly collected from the office by petitioner. The bound book of rental receipt stubs was turned over to petitioner with all stubs attached. Petitioner maintained no overall records of his business expenses. For return preparation, petitioner provided his accountant with miscellaneous expense receipts, including nondeductible items. During the years in issue, petitioner *263 provided his accountant with a small box containing rental receipt stubs that he had removed from the bound receipt books. Petitioner did not give his accountant all the receipt stubs originally contained in the bound books. For example, in 1973 one tenant committed suicide in his room, and another died in a fire in his room. However, the receipts given to the accountant did not include stubs reflecting the rental payments made regularly by these men. Petitioner also failed to disclose to his accountant interest income earned during the years in issue. Based on the information supplied to him by petitioner, the only years for which the accountant reported laundromat income were 1970 and 1971. In 1972, one of petitioner's employees, Elsie Young ("Young"), began keeping a record of the names of all tenants and their rental history on index cards. Petitioner encouraged Young to maintain these index card records, and he instructed subsequent employees to maintain these records. One of petitioner's former tenants, Ora Short ("Short"), took a set of index cards containing information concerning some of petitioner's 1973 tenants from a trash can in which petitioner had thrown them. *264 Short gave these cards to respondent's special agent during investigation of petitioner. Petitioner had accounts at four banks. He made an initial deposit of $8,582.53 in one account. Petitioner made deposits totalling: Year
Amount
1969
$24,422
1970
29,751
1971
20,803
From 1969 through 1971, petitioner made regular deposits in his accounts. Until late 1970, petitioner made weekly deposits ranging in amount from several hundred to over a thousand dollars. Beginning in November 1970, petitioner made one or two deposits per month of approximately $1,000 per deposit. In June, July, August, and September of 1971 petitioner made one deposit per month of $3,500, $3,000, $4,000, and $3,500, respectively. In 1972, petitioner withdraw in cash all of his savings, which totaled $77,100. He put this amount, together with other cash and buried it. In 1974, petitioner dug up the box and discovered that the cash had deteriorated due to moisture. In April 1974, petitioner presented mutilated currency to the U.S. Treasury Department, and received a check for $98,795. For the years 1970, 1972, and 1973, petitioner reported no tax liability on his Federal income *265 tax returns. In 1972, petitioner filed amended returns to reduce his previously reported 1969 and 1971 tax liabilities to zero. In 1976, petitioner was indicated for criminal tax evasion for the years 1969 through 1972 under section 7201. After a jury trial, petitioner was found guilty and sentenced to five years imprisonment, with probation after serving six months, and a $10,000 fine. In denying petitioner's motion for release pending appeal, the U.S. District Court, for the Northern District of Ohio, stated in a Memorandum and Order: The jury verdict upon which defendant's conviction is founded is not supported merely by substantial evidence upon the record as a whole. The evidence of defendant's guilt presented at trial was overwhelming. The defendant's testimony shows that he is without any legal or moral scruples insofar as accumulating money is concerned, although he has never previously been called upon to pay the penalty for his lawlessness. He certainly testified falsely in at least one portion of his testimony, and thus was probably guilty of perjury. There is no doubt that he caused at least one witness to testify falsely under oath. There is no reason why so *266 coldly calculating a law violator should be allowed to remain at liberty. [2]
In a written sworn statement given to respondent in 1975, Ruth Scroggy ("Scroggy"), a former employee of petitioner, stated that petitioner offered her money to testify falsely at the criminal trial. Scroggy died prior to the trial of the instant case, and respondent offered her written statement into evidence. Respondent determined the 1969 through 1972 deficiencies based on the net worth analysis. The 1973 deficiency was determined by specific items of income. Petitioner challenges respondent's net worth computation alleging he maintained a large cash hoard. He asserts that the increases in his net worth were the result of infusions of cash from this hoard. Petitioner argues that by gambling and selling souvenirs and rations, he accumulated over $177,000 in the 1940's while overseas for a year and a half in the U.S. Army. According to petitioner, this hoard consisted entirely of U.S. currency in $50 and $100 bills. Petitioner's *267 ex-wife did not see and had no knowledge of the alleged hoard. She never observed petitioner with more than $500.00 in cash. Additionally, petitioner claims to have received secret gifts from his father-in-law totalling $15,000. These gifts allegedly were made without the knowledge of petitioner's ex-wife. None of the state of Ohio personal property tax returns filed by petitioner for the years 1969 through 1972 included an entry for cash on hand. Petitioner asserts that respondent's specific item analysis is also incorrect. He alleges that the rental receipts provided to his accountant and used in preparing his return accurately reflected the total rental receipts received by him in 1973. Furthermore, petitioner argues that the sworn statement of Scroggy and the index cards supplied to respondent by Short are inadmissible hearsay under the Federal Rules of Evidence. Respondent admits that the contents of the documents are hearsay, but argues that they are admissible under Rules 804(b)(5) and 803(6) of Federal Rules of Evidence.
Rule 801(c) of Federal Rules of Evidence defines hearsay as "a statement, other *268 than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." Rule 804(b)(5) of Federal Rules of Evidence provides that a hearsay statement that possesses sufficient circumstantial guarantees of trustworthiness may be admitted. The rule expresses a preference for admitting hearsay evidence over an otherwise complete loss of the evidence. [3]
Rule 803(6) of Federal Rules of Evidence provides for admission of hearsay if the evidence in question consists of records maintained in the normal course of business. In the instant case, respondent offered the Scroggy statement for two purposes. First, the statement was offered as impeachment evidence, attacking the credibility of petitioner, and as such it is admissible. Rule 608(a) of Federal Rules of Evidence. Second, it was offered as substantive evidence demonstrating the fraudulent intent of petitioner. We need not rule on whether the statement is admissible for this purpose, although *269 we believe it is, because the trial testimony, the stipulated facts, and the other documentary evidence provide an overwhelming case against petitioner. As to the cards, the testimony of Young established that the index cards were maintained in the normal course of business. The cards were maintained by employees under petitioner's direction and control. Petitioner was aware that these records were kept and he encouraged his employees to maintain them. Thus, the index cards are admissible under Rule 803(6) of Federal Rules of Evidence.
When a taxpayer fails to maintain adequate books or records, respondent may recompute the taxpayer's tax liability by using either the net worth method or the specific item method of reconstructing income. Under the net worth method, income is computed by determining the excess of assets at cost over liabilities at the beginning and end of each year. The difference between the two figures represents the increase in net worth. This increase is then adjusted by adding nondeductible expenditures, including living expenses, and by subtracting any nontaxable income items, such as gifts or loans. See Holland v. United States,348 U.S. 121 (1954); *270 United States v. Giacalone,574 F.2d 328 (6th Cir. 1978), cert. denied 439 U.S. 834 (1978); Curtis v. Commissioner,623 F.2d 1047 (5th Cir. 1980), affg. in part and remanding in part a Memorandum Opinion of this Court. For the years 1969 through 1972, petitioner challenges only one item in respondent's net worth computation-- cash on hand. Petitioner alleges that he had a large cash hoard at the beginning of the net worth period. Petitioner seeks to account for his increases in net worth from 1969 through 1972 by showing that he possessed a cash hoard dating back to the mid-1940's, on which he drew during the years in issue. This allegation, supported only by petitioner's self-serving testimony, falls far short of overcoming respondent's clear and convincing evidence. Petitioner, citing Grace Bros., Inc. v. Commissioner,173 F.2d 170 (9th Cir. 1949), contends that his "uncontradicted" evidence must be followed. However, not only was petitioner's own testimony contradictory, but respondent impeached or contradicted petitioner's evidence. Moreover, it is within the province of this Court to determine the extent *271 to which the testimony of petitioner is believable. [4]Shahadi v. Commissioner,266 F.2d 495 (3rd Cir. 1959), cert. denied 361 U.S. 874 (1959), affg. 29 T.C. 1157 (1958). Petitioner's story is unbelievable, and we reject his testimony. He claims to have accumulated over $177,000 in fifty and hundred dollar bills during the year and a half he served in the U.S. Army. Additionally, he claims to have received $15,000 in gifts from his father-in-law. These alleged gifts were so secret that petitioner's ex-wife was unaware of them. She never saw petitioner with more than $500.00 cash. Petitioner's activities tell a different story. Petitioner received loans to finance his building projects, and invested in the construction of commercial property that generated income for him. Additionally, he used insurance proceeds, not cash from a hoard, to pay off one of his mortgages. Petitioner's ex-wife never knew of any cash hoard. Further, petitioner did not report the cash on his state personal property tax returns. Petitioner's attempt to create a buttress for his *272 story by burying cash withdrawn from his banks is belated and unconvincing. The approximately $20,000.00 supplement which petitioner buried with the $77,000.00 savings he withdrew from the bank clearly was derived from petitioner's 1972 unreported income. For the taxable year 1973, respondent determined that petitioner understated his income based on the records kept by petitioner's employees. Petitioner's only response is to insist that the receipt stubs provided by him to his accountant properly reflected total rental receipts. The record, however, does not support petitioner's position. The note cards, kept by petitioner in the regular course of business, show petitioner received more rental income than he reported. Petitioner had no explanation of the fact that numerous rental receipts of permanent tenants were missing from the stubs given the accountant. Receipts for two men who died while living at the El Dorado were not provided for return preparation. Moreover, petitioner could not adequately explain why the stubs were removed from their bound books prior to being presented to the accountant. Petitioner's positions that he maintained a cash hoard and that the receipts *273 provided the accountant accurately reflected his gross rental receipts are clearly untenable. The next issue for decision is whether respondent's determination of fraud should be sustained. We find that the evidence provided by respondent shows that petitioner fraudulently evaded tax in the years at issue. Section 6653(b) provides for an addition to tax of 50 percent of the underpayment if any part of the underpayment is due to fraud. Respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion, 578 F.2d 1383 (8th Cir. 1978). To establish fraud, respondent must show that the taxpayer filed his return with the specific intent to evade tax believed to be owing. Wilson v. Commissioner,76 T.C. 623, 634 (1981). The consistent understatement of substantial amounts of income over several years is strong evidence of fraud. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962); *274 Vannaman v. Commissioner,54 T.C. 1011, 1018 (1970). Conduct calculated to mislead or conceal is indicative of fraud ( Spies v. United States,317 U.S. 492, 498 (1943); Gajewski v. Commissioner,supra); and the failure to keep adequate records is indicative of an attempt to defraud. Papineau v. Commissioner,28 T.C. 54 (1957). Petitioner was found guilty of attempting to evade his income taxes for the years 1969 through 1972. He is, therefore, estopped from denying fraud as to those years. Otsuki v. Commissioner,53 T.C. 96 (1969). For the taxable year 1973, we find petitioner's underpayment of taxes was due to fraud. Petitioner established a pattern of underreporting income in prior years. Furthermore, he failed to report interest income and receipts from his laundromat in 1973. Petitioner maintained inadequate records and failed to provide his accountant with the bound receipt books. Petitioner lacks credibility since he attempted to bribe one former employee to give false testimony and caused at least one individual to commit perjury at the criminal trial. In addition, petitioner *275 presented this Court with an incredible tale. His testimony was contradictory, contrived, and unbelievable. We agree with the District Court's statement that petitioner is a "coldly calculating * * * law violator." On the basis of our consideration, we find that respondent has clearly and convincingly demonstrated fraud for the years in issue for purposes of section 6653(b). The imposition of the additions to tax for fraud in this case are incumbent and appropriate. We have considered petitioner's other arguments and find them unpersuasive. Finally, we must consider whether the statute of limitations bars the assessment or collection of any deficiency for the taxable year 1973. Section 6501(a) provides a three-year statute of limitations. However, under section 6501(c)(1) when a return is false and fraudulent, the statute of limitations does not bar the assessment or collection of the deficiency at any time. In the instant case, we have found petitioner's 1973 return to be fraudulent. Thus, the statute of limitations does not bar the assessment or collection of the deficiency for that year. Based on the foregoing, Decisions will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner objected to the admission of the Memorandum and Order. However, we ruled that the document is clearly admissible as a public record. Federal Rule 803(8)↩.
3. See Estate of Glass v. Commissioner,T.C. Memo. 1981-191↩.
4. See Whipple v. Commissioner,T.C. Memo. 1981-213↩.